# CITY OF ST. LOUIS v. UNITED RAILWAYS COMPANY.

## SAME v. ST. LOUIS AND SUBURBAN RAILWAY COMPANY.

## SAME v. ST. LOUIS AND MERAMEC RIVER RAILROAD COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Nos. 193, 194, 195.　Argued March 20, 23, 1908.—Decided May 18, 1908.

While a State, or a municipal corporation acting under the authority of the State, may deprive itself by contract of its lawful power to impose certain taxes or license fees, such deprivation only follows the use of clear and unambiguous terms; any doubt in the interpretation of the alleged contract is fatal to the exemption.

The fact that a street railway company has agreed to pay for the use of the streets of a city for a given period does not, in the absence of unequivocal terms to that effect, create an inviolable contract within the meaning and protection of the contract clause of the Federal Constitution which will prevent the exaction of a license tax within the acknowledged power of the city. *New Orleans City and Lake Railway Company* v. *New Orleans,* 143 U. S. 192.

The ordinances of the city of St. Louis, granting rights of construction and operation to street railways involved in this case, do not contain any clearly expressed obligation on the part of the city to surrender its right to impose further license or taxes upon street railway cars which is within the meaning and protection of the contract clause of the Federal Constitution.

THE facts are stated in the opinion.

*Mr. William F. Woerner,* with whom *Mr. Charles W. Bates* was on the brief, for appellant:

Under its charter, derived from the constitution of Missouri, art. IX, §§ 20–25, the city of St. Louis had the broad and specific power, in general, to enact ordinance 21,087 imposing a license tax on all street railway cars operated within its limits, as well as to enact the prior ordinance thereby replaced which had fixed the amount at $25.00 per car, per annum. The power

to tax as well as to license is conferred in express terms. Charter of St. Louis, art. III, § 26, cl. 5; *Springfield* v. *Smith,* 138 Missouri, 645, 654; *Kansas City* v. *Corrigan,* 18 Mo. App. 206; 27 Am. & Eng. Enc. Law (2d ed.), "Street Railways," p. 52; *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365. See further on the general power of cities to impose license taxes in Missouri: *St. Louis* v. *Weitzel,* 130 Missouri, 600, 619; *Aurora* v. *McGannon,* 138 Missouri, 38, 45; *St. Louis* v. *Green,* 7 Mo. App. 468, 474, aff'd on this point in 70 Missouri, 562.

An examination of the numerous franchise or right-of-way ordinances to the predecessors of appellees, demonstrates that the conditions therein recited "in consideration" of which the grants were made, are conditions annexed under art. X of the city charter, and assumed by the street car companies in order to obtain the city's initial consent, necessary under the state constitution, and cannot be construed as an exercise of the power conferred in the city charter in art. III, § 26, cl. 5, to tax street cars, nor as an exemption from such taxes.

There can be no question as to the right or propriety of the city to impose just such terms and conditions before giving its consent as it chose to impose in the said right-of-way ordinances, to wit: payment of certain fixed stipulated sums, or percentage of gross receipts increasing as the franchise ages, paving and repair of space between the rails, rate of fare, time for completion of work, etc.; all of such provisions stand upon the same basis as to the city's power, but vary in particularity with each respective ordinance.

Whilst it is true in one sense that all Missouri corporations, including street railways, derive their franchises or right to exist originally from the State, acting through the General Assembly under general law, yet the rights-of-way conferred by the city upon street railroads are in effect equivalent to franchises, because unlike other corporations, under the Constitution, no street railroad can be granted the right "to construct and operate a street railroad within any city, town, village, or on any public highway without first acquiring the

consent of the local authorities, nor can the franchise so granted be transferred without similar assent." Constitution of Missouri of 1875, art. XII, § 20. See also as to such power being equivalent to a franchise: *Blair* v. *Chicago*, 201 U. S. 400, *loc. cit.* 457–460; *State ex rel. Cream City Ry.* v. *Hilbert*, 72 Wisconsin, 184, *loc. cit.* 190.

And the charter of St. Louis also expressly provides that in granting the right-of-way or franchise to a street railway, the city "as a consideration therefor, may impose a per capita tax on passengers transported or an annual tax on gross receipts." Charter, art. X, § 1.

In construing the ordinance of a city conferring upon a street railway company the authority to construct and operate a street railway, the right of the city to exact license taxes will not be denied unless such right has been expressly surrendered in the ordinance. Such grants are construed strictly against the corporation companies, and liberally in favor of the public; silence is negation, and doubt is fatal to the claim. There is no such surrender by a grant to operate, construct and maintain a street railway, though given upon compliance with certain conditions and payments. And when the contract ordinance between the city and the company does not in terms dispense with the payment of a license tax, the rights of a company are not impaired by a subsequent ordinance requiring such payment. *Springfield* v. *Smith*, 138 Missouri, 645, 655; *Wyandotte* v. *Corrigan*, 35 Kansas, 21; *New Orleans City Ry.* v. *New Orleans*, 143 U. S. 192; *Railway Co.* v. *Philadelphia*, 101 U. S. 528; *Met. Street Ry. Co.* v. *New York*, 199 U. S. 1, 37; *Savannah Ry.* v. *Savannah*, 198 U. S. 392, 398; *Blair* v. *Chicago*, 201 U. S. 400, 471; *State ex rel. Cream City Ry.* v. *Hilbert*, 72 Wisconsin, 184, 194; *Newport &c. Ry.* v. *Newport*, 100 Virginia, 157; *New Orleans* v. *Orleans Ry. Co.*, 42 La. Ann. 4; *New Orleans* v. *New Orleans Ry. Co.*, 40 La. Ann. 587; *San Jose* v. *S. J. Railway*, 53 California, 475, 481; *State* v. *Herod*, 29 Iowa, 123; *Rochester Ry.* v. *Rochester*, 205 U. S. 236, 248; *Cleveland Electric Ry.* v. *Cleveland*, 204 U. S. 116, 130.

*Mr. Henry S. Priest,* for appellees:

The city of St. Louis had the power to grant the right to construct railways in the streets of the city; and the right to operate cars thereon for a definite period and a specific sum, payable as might be agreed. It might do both in a single ordinance, and such an ordinance when accepted by the grantee would become a binding and unalterable contract. This we claim it did by the several ordinances pleaded and put in evidence. *Detroit* v. *Railway Co.,* 184 U. S. 368; *Stearns* v. *Minnesota,* 179 U. S. 223; Art. III, § 26, subd. 5, 11, City Charter; Art. IV, City Charter.

The charter reservation of the right to alter, amend or repeal is not properly under discussion, because the ordinance which impairs the right does not pretend to be an amendment, alteration or repeal of the special ordinances granting the several rights to the different companies; and if it did, the right does not exist in such cases. Cases *supra* and Art. III, § 28, City Charter; *Ruschenberg* v. *Railway Co.,* 161 Missouri, 70.

MR. JUSTICE DAY delivered the opinion of the court.

These cases were submitted together and involve the effect of certain ordinances of the city of St. Louis, which are alleged to be binding contracts protected by the Federal Constitution.

A bill was filed in the Circuit Court of the United States for the Eastern District of Missouri by the United Railways Company of St. Louis and the St. Louis Transit Company, the former being the lessor and the latter the lessee of a large system of street railways in the city of St. Louis. The bill seeks to enjoin the enforcement of a certain ordinance, No. 21,087, in the city of St. Louis, passed March 25, 1903, alleging violation of the contract clause of the Constitution and of rights secured by the Fourteenth Amendment. The case was tried upon the bill, answer, replication and an agreed statement of facts.

The complainants are the owners of certain rights granted by ordinances to a number of street railway companies in the city of St. Louis, the assignors of the complainants. These ordinances are set out in the record and are quite numerous. Some of them cover quite extended terms, running as long as forty and fifty years. They purport on their face to grant to the railway companies' named in the ordinances, their licensees, successors and assigns, rights in certain streets "to operate, maintain and construct,"—"to lay down, construct, operate and maintain,"—"to reconstruct its tracks and maintain and operate its railway thereon." The grants in these ordinances are in consideration of certain undertakings and obligations stated therein on behalf of the railway companies, which are thus epitomized in the opinion of the learned judge in the case in the Circuit Court: (1) To commence and complete the work of laying down the tracks and installing the road within certain specified periods. (2) To grade the streets from curb to curb. (3) To construct and keep in repair that portion of the street lying between the tracks and twelve inches outside thereof. (4) To cause cars to be run day and night at certain intervals named in the ordinances. (5) To pay certain stipulated sums of money, or certain percentages of the gross earnings of the several companies, to the city each year during the continuance of the privileges specified in the contract.

At the time these ordinances were passed there was in force in the State of Missouri a certain provision of the state constitution, namely:

"No law shall be passed by the general assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchise so granted shall not be transferred without similar assent first obtained."

The city charter of St. Louis contains, among others, the following provisions:

"Article X.

·"Sec. 1. Authority of municipal assembly in reference to street railroads—May sell franchises or impose a *per capita* tax or a tax on gross receipts.—The municipal assembly shall have power by ordinance to determine all questions arising with reference to street railroads, in the corporate limits of the city, whether such questions may involve the constructions of such street railroads, granting the right of way, or regulating and controlling them after their completion; and also shall have power to sell the franchise or right of way for such street railroads to the highest bidder, or, as a consideration therefor, to impose a *per capita* tax on the passengers transported, or an annual tax on the gross receipts of such railroad, or on each car, and no street railroad shall hereafter be incorporated or built in the city of St. Louis except according to the above and other conditions of this charter, and in such manner and to such extent as may be provided by ordinance."

There was also in force in the city charter of St. Louis, article III, § 26, subdivision 11, which empowers the city, through its mayor and municipal assembly:

"Eleventh.—To protect rights of city in corporations— Grant, regulate and repeal railway franchises—Free passes on street railways prohibited.—To take all needful steps in and out of the State, to protect the rights of the city in any corporation in which the city may have acquired an interest; to have sole power and authority to grant to persons or corporations the right to construct railways in the city, subject to the right to amend, alter or repeal any such grant, in whole or in part, and to regulate and control the same as to their fares, hours and frequency of trips, and the repair of their tracks, and the kind of their rails and vehicles; but every right so granted shall cease, unless the work of construction shall be begun within one year from the granting of the right and be continued to completion with all reasonable practical speed, and it shall be the cause of forfeiture of the rights and privileges derived from the city of any railroad company operating

its road only within this city, which shall allow any person to ride or travel on its road gratuitously or for less than usual price of fare, unless such person be an officer or employee of such company."

The fifth subdivision of § 26 of article III, clause 5, confers upon the mayor and assembly the power to license, tax and regulate certain occupations and kinds of business, vehicles, conveyances, etc., among others, street railway cars. As appears from the agreed statement of facts, at the time the ordinances granting rights to the street railways were passed there were sections of the municipal code of St. Louis (2134 *et seq.*) in force, requiring the street railway companies to pay to the city collector an annual license fee of $25 for each and every car used by them, in transporting passengers for hire in the city. These sections were passed under the power conferred to license, tax and regulate occupations, vehicles and street railway cars.

The ordinance which is the subject-matter of this controversy is No. 21,087, purporting to impose a tax equal to one mill for each pay passenger on each car, and purporting to be an amendment of the sections of the municipal code fixing the license tax at $25 per car. It is stipulated in the agreed statement of facts that all the railway companies named in the complaint, including the United Railways Company and the St. Louis Transit Company, paid the annual license of $25 per car until the going into effect of ordinance 21,087.

This case was decided by the learned judge of the Circuit Court upon the theory that the power of the city to give its consent to the use of the streets for the purpose of constructing and operating railroads, and the power to license street railway cars, were both exercised in the special ordinances in question, and that in fixing the compensation to be paid by the railway companies an irrevocable contract was made which prevented the city, during the terms of the ordinances, from imposing any license fee or tax for the operation of the cars; for, says the learned judge:

"There is neither statutory command nor any perceptible reason why both these powers should not be exercised in one and the same ordinance, and 'such, in my opinion, is the obvious purpose of the original ordinances granted to complainants' assignors.

"The right 'to construct and operate' is conferred in terms admitting of no doubt. The license, which is essentially an occupation tax, is, in my opinion, also fixed in each of the ordinances. The several original ordinances or contracts clearly mean that the city exacted, among other things, certain quarterly or yearly payments of money to be made to it by the railroad companies as a consideration for the grant by it of the right to occupy and use its streets for the purpose of laying down, maintaining and operating railroad tracks thereon. The law nowhere commands that the license fee, as authorized by the fifth subdivision in question, shall be for annual or other terminal occupation. And I perceive no reason why the city may not at the outset fix such a license for the full term of its grant. This is what I think it did in and by the terms and stipulations of the several ordinances in question."

The theory, then, upon which the bill was framed and this case decided was that the city, having once fixed a price for the use of its streets, which the railway companies had agreed to pay, there was no right to impose a license tax upon the railway companies under the ordinance of March 5, 1903, amending the municipal code in the manner already referred to. These sections of the municipal code requiring the payment of the license fee impose a tax, as the main purpose of their enactment is the raising of revenue. *City of St. Louis* v. *Spiegel*, 75 Missouri, 145, 146.

The principles involved in this case have been the subject of frequent consideration in this court, and while it can be no longer doubted that a State or municipal corporation, acting under its authority, may deprive itself by contract of the power to exercise a right conferred by law to collect taxes or

license fees, at the same time the principle has been established that such deprivation can only follow when the State or city has concluded itself by the use of clear and unequivocal terms. The existence of doubt in the interpretation of the alleged contract is fatal to the claim of exemption. The section of the Missouri constitution and the laws, to which we have referred, clearly show that while the franchise of the corporation essential to its existence is derived from the State, the city retains the control of its streets, and the use of them must be acquired from the municipal authorities upon terms and conditions which they shall fix. *Blair* v. *Chicago*, 201 U. S. 400.

An examination of the cases in this court shows that it is not sufficient that a street railway company has agreed to pay for the privilege of using the streets for a given term, either in a lump sum, or by payments in installments, or percentages of the receipts, to thereby conclude the municipality from exercising a statutory authority to impose license fees or taxes. This right still exists unless there is a distinct agreement, clearly expressed, that the sums to be paid are in lieu of all such exactions.

A leading case is *New Orleans City & Lake Railroad Co.* v. *New Orleans*, 143 U. S. 192. In that case the city of New Orleans, on October 2, 1879, sold to the New Orleans City Railroad Company, assignor of the plaintiff in error, for the price of $630,000, the right of way and franchises for running certain lines of railroad for carrying passengers within the city, for the term of twenty-five years, and the company agreed to construct its railroad, to keep the streets in repair, to comply with the regulations as to the style and running of cars, rates of fare and motive power, and to annually pay into the city treasury, upon the assessed value of the road and fixtures, the annual tax levied upon the real estate, the value of the road and fixtures to be assessed by the usual mode of assessment; and the city bound itself not to grant, during the period for which the franchises were sold, a right of way to any other

railroad company upon the streets ·where their right of way was sold, unless by mutual agreement between the city and the purchaser or purchasers of the franchises.

Afterwards, in the year 1887, under authority of a legislative act, the city imposed a license tax upon the business of carrying on, operating and running a horse or steam road for the transportation of passengers within the limits of the city, payable annually, and based on the annual gross receipts; when the same exceeded $500,000, the amount to be $2,500. The railroad company admitted its receipts exceeded that sum, and claimed the protection of the Constitution of the United States for its franchise contract extending to January 1, 1906, as above set forth.

This would seem to be as strong a case for the exemption from the license tax as could be made, short of a specific agreement binding the city not to exercise its power in that direction.

This court affirmed the judgment of the Supreme Court of Louisiana denying the contention of the railroad company (40 La. Ann. 587), and Mr. Justice Gray, speaking for the court, said (143 U. S. 195):

"Exemption from taxation is never to be presumed. The legislature itself cannot be held to have intended to surrender the taxing power, unless its intention to do so has been declared in clear and unmistakable words. *Vicksburg &c. Railroad* v. *Dennis*, 116 U. S. 665, 668, and cases cited. Assuming, without deciding, that the city of New Orleans was authorized to exempt the New Orleans City Railroad Company from taxation under general laws of the State, the contract between them affords no evidence of an intention to do so. The·franchise to build and run a street railway was as much subject to taxation as any other property.

"In *Gordon* v. *Appeal Tax Court*, 3 How. 133, upon which the plaintiff in error much relied, the only point decided was that an act of the legislature, continuing the charter of a bank, upon condition that the corporation should pay certain sums

annually for public purposes, and declaring that, upon its
acceptance and complying with the provisions of the act, the
faith of the State was pledged not to impose any further tax
or burden upon the corporation during the continuance of the,
charter, exempted the stockholders from taxation on their
stock; and so much of the opinion as might, taken by itself,
seem to support this writ of error has been often explained or
disapproved. *State Bank* v. *Knoop*, 16 How. 369, 386, 401,
402; *People* v. *Commissioners*, 4 Wall. 244, 259; *Jefferson
Bank* v. *Skelly*, 1 Black, 436–446; *Farrington* v. *Tennessee*,
95 U. S. 679, 690, 694; *Stone* v. *Farmers' Loan & Trust Com-
pany*, 116 U. S. 307, 328.

"The case at bar cannot be distinguished from that of *Mem-
phis Gaslight Co.* v. *Shelby County*, in which this court upheld
a license tax upon a corporation which had acquired by its
charter the privilege of erecting gasworks and making and
selling gas for fifty years; and, speaking by Mr. Justice Miller,
said: 'The argument of counsel is that if no express contract
against taxation can be found here it must be implied, because
to permit the State to tax this company by a license tax for
the privilege granted by its charter is to destroy that privilege.
But the answer is that the company took their charter subject
to the same right of taxation in the State that applies to all
other privileges and to all other property. If they wished or
intended to have an exemption of any kind from taxation,
or felt that it was necessary to the profitable working of their
business, they should have required a provision to that effect
in their charter. The Constitution of the United States does
not profess in all cases to protect property from unjust and op-
pressive taxation by the States. That is left to the state con-
stitution and state laws.' 109 U. S. 398, 400."

This case was but an affirmation of the doctrine announced
in *Railroad Company* v. *Philadelphia*, 101 U. S. 528; *Delaware
Road Tax Case*, 18 Wall. 206. The New Orleans case was quoted
with approval, and the former cases in this court reviewed in the
recent case of *Metropolitan Street Railway Company* v. *New*

*York Tax Commissioners*, 199 U. S. 1. In that case the decision of the New York Circuit Court of Appeals was affirmed, sustaining the right of the State of New York to tax franchises of street railway companies, notwithstanding the railway companies had already paid for the right to construct, maintain and operate and use street railroads in consideration of payment into the treasury of the city of New York of a percentage of their gross receipts. In that case Mr. Justice Brewer, who spoke for the court, said (pp. 37, 38):

"Applying these well-established rules to the several contracts, it will be perceived that there was no express relinquishment of the right of taxation. The plaintiff in error must rely upon some implication and not upon any direct stipulation. In each contract there was a grant of privileges, but the grant was specifically in respect to the construction, operation and maintenance of a street railroad. These were all that in terms was granted. As consideration for this grant the grantees were to pay something, and such payment is nowhere said to be in lieu of or as an equivalent or substitute for taxes. All that can be extracted from the language used was a grant of privileges and a payment therefor. Other words must be written into the contract before there can be found any relinquishment of the power of taxation."

Many state authorities have reached the same conclusion. We will refer to some of them. *Springfield* v. *Smith*, 138 Missouri, 645; *Wyandotte* v. *Corrigan*, 35 Kansas, 21; *State ex rel. Cream City Ry.* v. *Hilbert*, 72 Wisconsin, 184; *Newport &c. Ry.* v. *Newport*, 100 Virginia, 157; *New Orleans* v. *Orleans Ry. Co.*, 42 La. Ann. 4; *New Orleans* v. *New Orleans Ry. Co.*, 40 La. Ann. 587; *San Jose* v. *S. J. Railway*, 53 California, 475, 481; *State* v. *Herod*, 29 Iowa, 123.

Applying these principles to the ordinances in question, we do not find in them any express relinquishment of the power to levy the license tax which is the subject-matter of this controversy. In some of them is found the language that "such payments are to be in addition to all taxes, as now or 'after-

wards shall be prescribed by law." In one ordinance concerning consolidation of roads it is agreed, as to certain payments from gross receipts, that such "payments shall be in addition to all other taxes or license fees now or hereafter prescribed by law." In one of them is found the following language:

"Said Lindell Railway Company shall in lieu of all payments, now required of it under any and all previous ordinances, and such as are now, or may hereafter by ordinance passed be required of any railroad company whose tracks it is hereby authorized to acquire, etc., on the first day of (various months) pay to the city of St. Louis, etc. (various sums), which several sums said Lindell Railway Company, its successors and assigns, in consideration of the rights and privileges granted by this ordinance, hereby agrees to pay to the city of St. Louis, at the times, . . ." etc.

The stipulation as to the payments to be in lieu of all other payments under previous ordinances and such as are now or may by ordinance be hereafter passed, etc., in this ordinance may well be referred to the special ordinances passed under the right to grant the use of the streets "in consideration of the rights and privileges" therein granted, and are not designed to repeal *pro tanto* the section of the municipal code then in effect imposing a license fee on railway cars operated in the city.

No ordinance contains any express relinquishment of the right to exact a license fee or tax. It is true that the city in granting the right to use the streets by special ordinance and in exercising by general ordinance the right conferred in the charter to impose a license tax upon cars is dealing with rights and privileges somewhat similar, but, nevertheless, essentially separate and distinct. In the special ordinances the city is making an arrangement with the railway company to confer the right to use the streets in consideration of certain things the company is to do by way of operation and otherwise, including, it may be, payment of fixed sums or a proportion of receipts in consideration of the rights and privileges conferred.

The city does this by virtue of its power to grant rights and privileges and control their exercise in the streets of the city, power expressly conferred in the charter of the city.

In the fixing of a license tax upon all companies alike for the privilege of using cars in the city, it is exerting other charter powers. It makes provision uniformly applicable to all persons or companies using street cars. It is a revenue measure equally applicable to all coming within its terms. We do not perceive that the exercise of the power to grant privileges in the streets in making terms with companies seeking such rights, in the absence of plain and unequivocal terms to that effect, excludes the city's right to impose the license tax under the power conferred for that purpose.

How, then, stands the case? Is it true that because the city has required and the company has agreed to pay certain sums fixed in amount, or based on the receipts, for the use of the streets, that it has thereby deprived itself of the power to exercise the authority existing at the time the ordinances were passed to license street railway cars, and in the exercise of that power to charge a license fee or tax? At the time when the several special ordinances were passed the city of St. Louis had the right under its charter to grant the use of the streets for the use of the company, upon the terms which are named in such ordinances. It also had authority under another provision of its charter to require a license fee on certain vehicles, including street railway cars. There was in force a section of the municipal code assessing this license charge at $25.00 per annum for each car. (This is the code which has been amended by No. 21,087, in controversy.) It is stipulated that until the passage of the last-named ordinance the railway companies paid the license fees without objection. It is said in the opinion of the learned judge below that the tax, equal to one mill for each paid passenger, amounts to a tax of two per cent on the gross receipts, and is, therefore, an increase on what the company had theretofore agreed to pay. But the tax is not levied on the gross receipts as such, and any license tax, in

whatever sum imposed, would take something from the gross receipts of the company.

· It seems to us that this case is virtually decided by the rule laid down in *Railway Company* v. *New Orleans*, 143 U. S. 192, *supra,* which holds that because a street railway company has agreed to pay for the use of the streets of the city for a given period, it does not thereby create an inviolable contract which will prevent the exaction of a license tax under an acknowledged power of the city, unless this right has been specifically surrendered in terms which admit of no other reasonable interpretation.

We are of the opinion that an application of settled principles, derived from the decisions of this court, shows that these ordinances do not contain any clearly expressed obligation on the part of the city surrendering its right to impose further license fees or taxes upon street railway cars, and we are of the opinion that the learned Circuit Court erred in reaching the contrary conclusion and in granting a decree perpetually enjoining the enforcement of the ordinance in controversy.

We have discussed this case on the record and briefs filed in No. 193. It was said by the learned counsel in the argument at bar that cases Nos. 194, 195 involved identical questions. For the reasons stated the decrees in the three cases are reversed.

*Reversed.*