### CITY AND COUNTY OF DENVER v. STENGER (two cases).*

(Circuit Court of Appeals, Eighth Circuit.    January 14, 1924.)

Nos. 6288, 6289.

1. **Appeal and error ⟨key⟩80(6)—Appeals from refusal to allow preferred claim not premature.**

   Appeals by city from an order denying preferential allowance of claims against receiver of a tramway company for money due under a franchise, and dismissing the application therefor, *held* not premature, notwithstanding that the trial court still has before it the question as to renunciation of the franchise.

2. **Appeal and error ⟨key⟩920(5)—Circuit Court of Appeals will presume that trial court acted on proper notice.**

   Where nothing appeared in the record concerning notice or lack thereof, and the trial court proceeded and determined the matter, receiver's contention, on appeals by a city from an order denying preferential allowance of claims against the receiver of a tramway company for money due under a franchise, that the other creditors were not given notice, *held* without merit, as the Circuit Court of Appeals will presume that the trial court acted on proper notice, at least so far that the receiver cannot now raise the point.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied April 8, 1924.

**3. Appeal and error ⬉840(1)—Contention that question as to allowance of preferred claim cannot be considered on merits untenable.**

A contention that appeals by a city from an order denying preferential allowance of claims against the receiver of a tramway company for money due under a franchise should not be considered on the merits, as there was no allegation or showing of funds on hand from which payment might be immediately ordered, *held* untenable as the city may be entitled to allowance and classification of its claims, though not entitled to immediate payment.

**4. Street railroads ⬉58—Claim for franchise charges accruing before receivership enforceable.**

Where a tramway company was operating under a franchise during the months immediately preceding the appointment of a receiver, it cannot escape paying the amount due the city for operation under the franchise during that period.

**5. Municipal corporations ⬉682(4)—Compensation for use of streets in nature of rental.**

The power to grant the privilege of making special use of the streets of a municipality under terms and conditions agreeable to it is a police power, and compensation therefor is in the nature of rental.

**6. Municipal corporations ⬉682(4)—Power to tax use of streets revenue power.**

The power to tax the exercise of the privilege of making a special use of the streets of a municipality is a revenue power, and exactions thereunder are taxes.

**7. Constitutional law ⬉138—Municipality may by contract deprive itself of right to tax franchise.**

A municipal corporation may by contract grant the right to special privileges in its streets to a tramway company and deprive itself of the right to tax the exercise thereof.

**8. Receivers ⬉153—Claim for payments under franchise contract not entitled to priority on theory of tax.**

Where a municipality by contract granted to a tramway company the right to make special use of its streets, and deprived itself of the right to tax the exercise thereof, and the franchise provided for no lien, and did not place payments under the contract within the classification of taxes, its claim for payments due under the contract was not entitled to priority in receivership, on the theory that such payments were a tax or in the nature of a tax.

**9. Receivers ⬉153—Statutory tax lien not enlarged by construction.**

Although receivership proceedings will not be permitted to defeat a statutory lien for taxes, such a lien will neither be created by implication nor enlarged by construction.

**10. Receivers ⬉158(4)—Rental charges not entitled to priority.**

Rental or operating charges of a tramway company prior to receivership, or such operating charges in the nature of rental, are not entitled to priority over lien claimants.

**11. Receivers ⬉152—Municipal corporation entitled to priority for payment of claims due under franchise contract with tramway company prior to appointment of receiver.**

Where a municipal corporation by contract granted to a tramway company the use of its streets, and deprived itself of the right to tax the exercise thereof, as to a claim for payment thereunder accruing prior to the appointment of a receiver for the tramway, the municipality is entitled to priority on the theory that it is a debt due a sovereign, though such claim is not a tax.

**12. Common law ⬉12—In force in Colorado.**

Under Comp. Laws Colo. 1921, § 6516, the common law is in force in Colorado.

---

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**13. Municipal corporations ⟷255½—City entitled to priority as creditor.**

A city is an agency of the state exercising the delegated sovereignty thereof in local matters, and is entitled to whatever priority the state might demand.

**14. Courts ⟷85(2)—Rules having reference to public good should not receive strict interpretation.**

A rule having reference to the public good should receive no strict or narrow interpretation.

**15. States ⟷110—Scope of priority of debt due sovereign outlined.**

The priority accorded a debt due the sovereign given by the common law is an inchoate right, which attached only from and as of the time when it was properly claimed or asserted, and did not affect or take precedence over claims which were fixed on the property prior to that time and were then in force.

**16. Receivers ⟷90—Rights and duties of receiver in chancery of a public utility relative to existing contracts outlined.**

A receiver in chancery of a public utility is not an assignee of the contracts with the owner of the property he is administering, but is the custodian for the court in charge of such property. He has complete freedom under orders of the court to adopt and fulfill or renounce and abandon, during the receivership such a contract, and has a reasonable time after becoming receiver within which to determine and make evident such adoption or renunciation, and during that time he is not bound by the contract, but his relation to it is in suspension until he adopts or renounces it. Where the subject-matter of the contract is such that it is necessary or advisable for receiver to make use of the advantages of the contract during this period of suspension, he may do so without necessarily confining himself to an adoption thereof. If he makes such usage and thereafter renounces the contract, he is liable for such usage for the time the other party was, without its consent or acquiescence, held subject to the contract. The measure of such liability is not that prescribed by the contract, but is the value of the benefit such usage has been to the estate, not exceeding the compensation stipulated in the contract.

**17. Receivers ⟷155—Receiver of tramway company liable for value of benefit from use of franchise.**

Where the estate of a tramway company was benefited to a substantial extent by use by the receiver of a franchise of the tramway company, the receiver is liable to the municipality for the value of that benefit not exceeding the franchise requirement.

**18. Street railroads ⟷24(4)—Agreed value of tax-exempt franchise held reasonable.**

The right to operate the only street car system in a city of 250,000 people and to be exempt from taxation for doing so *held* reasonably worth $5,000 a month, in view of an agreement of the parties fixing the value at that amount.

**19. Receivers ⟷155—Amount due city under franchise for operation subsequent to receivership entitled to priority.**

A debt accruing subsequent to receivership, due to a city for the operation of a street railway system under a franchise contract exempting it from taxation, *held* an operating expense, and as such entitled to priority of payment over lien and unsecured creditors out of income, and, if that is insufficient, out of the corpus of the property.

**20. Receivers ⟷163—Interest allowable on franchise charges accruing before receivership.**

Where a city by a contract granted to a tramway company the right to use of the streets and exemption from taxation, installments due under this contract accruing prior to receivership bear interest at the legal rate of 8 per cent.

---

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**21. Receivers ☞163—Interest not allowable on franchise charges accruing after receivership.**

A sum representing the value of the benefit of franchise rights of a tramway company subsequent to receivership *held* not to bear interest.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Two separate proceedings by the City and County of Denver against E. Stenger, as receiver of the Denver Tramway Company. From a decree in each proceeding, denying the first-named party's claim and dismissing its application, the first-named party appeals. Decree reversed, with instructions to reinstate the claim in each proceeding.

James A. Marsh, of Denver, Colo. (Ernest Morris, John I. Mullins and Rice W. Means, all of Denver, Colo., on the brief), for appellant.

Gerald Hughes, of Denver, Colo. (Clayton C. Dorsey and Howard S. Robertson, both of Denver, Colo., on the brief), for appellee.

Before STONE, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

STONE, Circuit Judge. These are appeals by the city and county of Denver from an order denying preferential allowance and payment of claims against the receiver of the Denver Tramway Company and dismissing the application therefor. The two appeals are from the same order and will be treated as one. The appellant is successor of the city of Denver and appellee is successor of various tramway companies which have operated in Denver since 1871.

For some years prior to 1906, there had been litigation between the parties concerning the validity and construction of two franchises granted to the predecessors of appellee in 1885 and 1888. In 1906, the parties, expressly without waiving any rights or contentions as to the earlier franchises, agreed upon a franchise which should govern the relations between them for 20 years. One section of that franchise provides as follows:

" Section 2. As a further consideration for this franchise and grant and in lieu of any car licenses now or hereafter during the life of this franchise and grant, assessed, charged or collected by the city and county of Denver, the Denver City Tramway Company shall pay to the city and county of Denver the sum of twelve hundred thousand dollars ($1,200,000.00), payable in equal installments of five thousand dollars ($5,000) each on the first day of each and every calendar month during the life of this franchise. Such consideration and fund shall be known as 'the tramway fund' and shall be paid to the treasurer of the city and county of Denver, and by him kept separately, and shall be used solely for the establishment, improvement and maintenance of the streets, boulevards and parks of the city and county of Denver, to be expended in such manner and in such sums as shall be annually determined by the city council in the annual appropriation bill."

Appellee made the payments called for by this section from 1906 until September 1, 1920. December 24, 1920, a receiver was appointed for and has since been in possession of the property and conducting the business of appellee. No payments under section 2 have been made by the receiver. On January 17, 1921, the receiver applied for authority

to renounce the franchise of 1906 and that matter is yet pending. August 15, 1921, appellant filed its application setting forth the above franchise provision, alleging arrearage thereunder of $60,000 ($20,000 before and $40,000 during the receivership), claiming preference as a tax obligation and praying an order requiring immediate payment of the arrearage and providing for payment of future monthly payments as they became due; also, for general relief. The order of the court was:

"That said petition be and the same is hereby denied and that the petition be and the same is hereby dismissed out of this court at the costs of the petitioner to be taxed."

[1] Before the merits of the appeals can be reached, we are met with the contention of the appellee that the appeals are premature because, as is claimed, the court still has before it the question of renunciation of the franchise and may in that matter decide these sums to be due and authorize payment thereof. The position of the trial court in this respect is shown in his memorandum opinion, a portion of which is as follows:

"I am unable to find any ground on which a preference right over other creditors of any class could be given to the city's claim in this proceeding, and it has not asked for allowance as a general creditor.

"When the request of the receiver to be permitted to renounce the performance of any obligations under the franchise of May, 1906, and to be relieved of its burdens, comes on to be heard it may be that the court will find that his request should not be granted, that the Tramway Company received valuable rights under that franchise as good and sufficient consideration for the sum that it agreed to pay therefor, that those rights should be retained, and that all installments provided for under section 2 of that franchise ordinance should be met and discharged; but as to what should be done in that regard, and whether the receiver should be ordered to pay installments, cannot now be determined, nor until the court is better informed as to the claim and contention of the receiver in that respect.

"The city's application for a preference right to the unpaid installments on the grounds claimed is denied, and its petition therefor dismissed."

While it is fairly inferable from the above language, that the court reserved the right to deal further with this matter in case he denied renunciation of the franchise, yet appellant was asserting a right of preferential allowance and payment of its claim irrespective of the outcome of the renunciation matter. This preference was definitely denied and the application therefor dismissed finally. As to appellant's claim for preference under any and all circumstances, this determination was final and disposed of valuable rights asserted by appellant. The order was of that finality which entitled appellant to have it reviewed and the appeals for that purpose are not premature.

[2] Appellee contends that the appeals should be determined without entering the merits of the order for either of two reasons: that other creditors entitled to preference would have a right to be notified and heard concerning this application, which was not done; and that there was no allegation or showing of funds on hand from which payment might be immediately ordered. The only notice appearing in the record is one to the receiver to the effect that the court would be asked to set the hearing on the application. There is no notice, even to the receiver, of the hearing itself. The record is silent as to any objection

made by any one to proceeding at the time of hearing because of lack of any notice. Without determining whether the receiver could raise the question of lack of notice to others, either at the hearing or here, it is enough to say that nothing appearing in the record concerning notice or lack thereof and the court having proceeded and determined the matter, we will presume that he acted upon proper notice, at least so far that the receiver cannot now and here raise this point.

[3] While appellant sought immediate payment of its claim as a preferred claim, yet it might be entitled to allowance and classification of its claim and yet not entitled to immediate payment. The allegation and showing as to available funds would be very material on the question of immediate payment but of no importance as to the allowance. An allowance settles the liability and, usually, the status of a claim. The payment satisfies the claim. Upon this application, even though it sought preferential and immediate payment, the claim might have been properly allowed and also classified as to priority of payment, the payment being left to subsequent order.

[4] With these matters determined, we approach consideration of the merits of the application, in so far as allowance and status are concerned. Because there are differences in the legal considerations governing the character and status of that portion of the claim accruing prior to the receivership and that portion accruing during the receivership, we will examine them separately. The existence of the above quoted franchise provision and nonpayment thereunder, as asserted, are undisputed. That the company was operating under the 1906 franchise during the months immediately preceding the time the receiver was appointed is unchallenged. It enjoyed the benefits thereof and cannot escape the attendant burdens. The amount ($20,000) due during that period is, therefore, a just claim against the company and can be established in the receivership proceeding. What may be its status as to rights of preferential payment is another matter which will be now determined.

[5, 6] Appellant makes several claims as to the nature of this obligation, asserting that under any of them it is entitled to a preference. It claims (1) that this is a tax; (2) that it is "in the nature of a tax"; (3) that it is an operating charge in the nature of rental; (4) that, in any event, it is money due the sovereign and attended with the rights to preferential payment attaching, under the common law, to debts due the sovereign. It seems unchallenged that, at all times here material, the appellant possessed the power to deny the privilege of special use of its streets or to grant such under terms and compensations agreeable to it; also, that it possessed the further power to tax the exercise of such privileges. The former is a police power and compensation therefor is in the nature of rental. St. Louis v. Western Union Teleg. Co., 148 U. S. 92, 97, 13 Sup. Ct. 485, 37 L. Ed. 380. The latter is a revenue power and exactions thereunder are taxes. St. Louis v. United Railways Co., 210 U. S. 266, 274, 28 Sup. Ct. 630, 52 L. Ed. 1054.

[7, 8] Appellant might, by contract, both grant the right to special privileges in its streets and also deprive itself of the right to tax the exercise thereof. St. Louis v. United Railways Co., 210 U. S. 266, 273, 28 Sup. Ct. 630, 52 L. Ed. 1054. It did both expressly in the

franchise of 1906. Part of the consideration moving to appellant in that contract was the payment (section 2 above quoted) of $1,200,000 in monthly installments of $5,000 each. That payment was expressly and clearly designed for two purposes: As "a further consideration" for the privileges granted in the franchise and as compensation for appellant giving up its right to exercise the power to tax such privileges through the medium of car license taxes. The obligation to make these payments is purely contractual. The voluntary nature thereof is not affected by the fact that one of the advantages inducing assumption of it was freedom from car license taxes. Being voluntary in origin it cannot be a tax. St. Louis v. Western Union Teleg. Co., 148 U. S. 92, 97, 13 Sup. Ct. 485, 37 L. Ed. 380.

[9] But, appellant contends, that if such payments be not taxes in an exact, technical sense, yet they are "in the nature of" taxes and entitled to the priority of such. The priority of taxes, *as such,* due prior to receivership, rests upon lien rights established by statute. Although the receivership proceedings will not be permitted to defeat this statutory priority (George v. St. Louis, C. & W. Ry. Co. [C. C.] 44 Fed. 117), yet the lien "will neither be created by implication nor enlarged by construction" (37 Cyc. 1139). The provision in this franchise provided for no lien nor did it, by expression or by fair implication, place these payments within the classification or the advantages of taxes. A further consideration is that the payments are not intended solely as compensation for giving up the right to levy car license taxes. They are, also, partly in consideration of the grant of the privilege to occupy the streets. There is no practical way or standard of determining what portion of these sums should be regarded as being in lieu of such taxes and what as consideration for the grant. We think no priority has been shown based on the theory of a tax or of a payment in the nature of a tax.

[10] The contention that the payments are operating charges in the nature of rental seems sound. That this character of charge is in the nature of rental has been determined by the Supreme Court. St. Louis v. Western Union Teleg. Co., 148 U. S. 92, 97, 13 Sup. Ct. 485, 37 L. Ed. 380. That it is an operating charge is clear from the fact that the space and privileges for which the rental is paid were the basis of any and all operation of the property. But rental or operating charges (prior to receiverships) or such operating charges in the nature of rental or not, as such and without more, entitled to priority over lien claimants.

[11-14] The final contention is that the claim is entitled to the priority accorded a debt due the sovereign under the common law. We think this contention well founded. Under the common law, the sovereign had a right to a certain preference in payment. Marshall v. N. Y., 254 U. S. 380, 382, 41 Sup. Ct. 143, 65 L. Ed. 315; United States v. Bank of N. C., 6 Pet. 29, 35, 8 L. Ed. 308. The common law is, by statutory authority (section 6516, Comp. L. Colo. 1921), in force in Colorado. Appellant is an agency of the state exercising the delegated sovereignty thereof in local matters. It is entitled to whatever priority the state might demand. Appellee challenges any such priority on four grounds: that no decision of the Colorado courts has held that such

priority exists as a prerogative right of the sovereign instead of as a mere administrative rule; that the priority applies only to a tax and this is not a tax; that the basis for this franchise obligation rests solely on exercise of the power of the proprietor and not of the sovereign; that the right is lost when specific liens exist in advance of assertion of such priority. The logical result of the first contention would be that, although this attribute and advantage attaching to sovereignty was recognized and enforced at common law and although the common law is placed in full force by the statute of a state yet, until the highest court of that state shall declare this right to exist as a prerogative of sovereignty, no federal court can recognize it. This is, in effect, to require federal courts to recognize the right as purely a domestic administrative policy of the state until the high state court has declared it to be prerogative. If any presumption must be indulged, why not make use of the more reasonable one, which is that this undoubted right of the state is enforceable in any forum? Since the rule has reference to the public good it should receive no strict nor narrow interpretation. United States v. Bank of N. C., 6 Pet. 29, 35, 8 L. Ed. 308.

The second contention, that the priority of the sovereign attaches only to taxes, is unsound. The reason for the rule is public policy which declares that it is more important for the state—all of the people—to have its money than for any single citizen or group of citizens. The rule covers all manner of debts due the state (United States v. Bank of N. C., 6 Pet. 29, 35, 8 L. Ed. 308), whether the origin of such be involuntary imposts or voluntary obligations (Marshall v. New York, 254 U. S. 380, 382, 383, 41 Sup. Ct. 143, 65 L. Ed. 315, and cases there cited). The above determination of the second contention disposes of the third contention that the obligation under this franchise is based on the proprietary function of the municipality. This is so, because, if the rule applies to all debts due the state, it would cover those arising from exercise of proprietary functions, hence it is immaterial here and we need not inquire whether the municipality was exercising a proprietary or a sovereign function.

[15] The fourth contention, that the preference as sovereign is lost when specific liens exist in advance of the assertion of the preference by the sovereign, is stated too broadly. This preference given by the common law was an inchoate right which attached only from and as of the time when it was properly claimed or asserted and did not affect or take precedence over liens which were fixed upon the property prior to that time and were then in force. Marshall v. New York, 254 U. S. 380, 384, 41 Sup. Ct. 143, 65 L. Ed. 315; The King v. Watson, 3 Price, 6; Rex v. Lee, 6 Price, 369; excellent note, with citations, 29 L. R. A. 245; also see 1 L. R. A. (N. S.) 255, note.

Applying the above considerations to that portion of the claim accruing before the receivership, results in allowance thereof with a preference in payment next following claims carrying liens which had attached at the time appellant filed this application.

We next enter examination of that portion of the claim ($40,000) alleged as having accrued during the receivership up to the time this application was filed. Less than a month after the receivership began, the receiver applied, among other things, for leave to renounce the

franchise of 1906. He alleged that there were earlier franchises (those of 1885 and 1888) which were sufficient and that this franchise was burdensome. That application, in so far as it related to renunciation of this franchise, is pending.

The relation of a chancery receiver of a public utility in federal courts to contracts (not involving the exercise of grants from the sovereign for the public benefit) has been repeatedly defined by the Supreme Court and the lesser federal courts. A few of such cases are United States Trust Co. v. Wabash Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085; Quincy, etc., R. R. Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787, 36 L. Ed. 632; Sunflower Oil Co. v. Wilson, 142 U. S. 313, 12 Sup. Ct. 235, 35 L. Ed. 1025; Kneeland v. Am. Loan Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379; Peoria & Pekin Union Ry. Co. v. C. P. & S. R. R. Co., 127 U. S. 200, 8 Sup. Ct. 1125, 32 L. Ed. 110; Peabody Coal Co. v. Nixon, 226 Fed. 20, 140 C. C. A. 446 (this court); and New York, P. & O. R. Co. v. New York, L. E. & W. R. Co. (C. C.) 58 Fed. 268 (opinion by Lurton; Taft concurring). These cases differentiate between chancery receivers on the one hand and statutory receivers, assignees for creditors and receivers in bankruptcy on the other. They indicate, also, the difference between receivers of public utilities and receivers of ordinary private businesses. Whether franchises granting privileges to be used for the public benefit are subject to the same conditions and rights of renunciation as private contracts, we do not inquire now for two reasons: First, that matter is pending before the trial court on the application of the receiver to renounce and has not been presented here; second, it is not necessary, in our view, to decision of these appeals. Therefore, we leave that question untouched and examine the matter without reference to any such possible distinction.

We think the rules to be deduced from the above and many other decisions in the federal courts are as follows:

[16] A receiver *in chancery* of a *public utility* is not, as such, an assignee of the contracts with the owner of the property he is administering, but is the custodian for the court in charge of such property. He has complete freedom (under orders of the court) to adopt and fulfill or to renounce and abandon, during the receivership, such a contract. He has a reasonable time after becoming receiver within which to determine and make evident such adoption or renunciation. During that time he is not bound by the contract but his relation to it is in suspense until, by word or act, he adopts or renounces it. Where the subject-matter of the contract is such that it is necessary or advisable for the receiver to make use of the advantages of the contract during this period of suspension, he may do so without necessarily committing himself to an adoption thereof. If he make such usage and thereafter renounce the contract, he is liable for such usage during the time the other party was, without its consent or acquiescence, held subject to the contract. The measure of such liability is not that prescribed by the contract but is the value of the benefit such ad interim usage has been to the estate, not exceeding the compensation stipulated in the contract.

[17-19] Applying these rules to the instant facts results as follows: Within a reasonable time, the receiver manifested positively his intention and desire to renounce the contract. The period of suspension accorded by the above rule is equally applicable to the period consumed by the court in determining whether the contract should be renounced. During this entire period, this receiver was and is acting under and receiving the benefits of the 1906 franchise. The franchises of 1885 and 1888 cannot be regarded, even though authorizing operation on the streets, as being the basis upon which the receiver is now operating because he is receiving substantial benefits not claimed to be covered by such franchises, in that the property is now escaping and the city cannot levy car license taxes. The estate is benefited to a very substantial extent by this use by the receiver of the 1906 franchise because it is enjoying an undisputed right to conduct its business and it is escaping taxation by the appellant for such operation. The receiver is, therefore, liable to the appellant for the value of that benefit, not exceeding the franchise requirement. What is that value in money? There neither is nor can be any market or other fixed method of determining the value of such franchise rights. It must be determined by consideration of the attendant facts. All of such facts are in this record. The ultimate reduction of these facts is that the receiver is exercising the rights to operate the only street car system existing or now having the right to exist in a growing city of 250,000 people and to be exempt from taxation for doing so. What better or fairer measure of the value of such rights could be found than the calm judgment of the parties who secured and who gave such rights, as embodied in their contract therefor? We find no difficulty in determining that the value of these benefits to the estate is that prescribed in the franchise of 1906. Therefore, the receiver is liable at that rate ($5,000 monthly) until the court shall order renunciation of the franchise and thereby release the appellant from the burdens and obligations thereof. What has just been said, results in allowance of the claim (at the rate of $5,000 monthly) for the period since the receivership began. What is the status of this part of the claim as to preference in payment? Rights such as accorded by this franchise are prime requisites to any operation of this property. Such rights and the resulting operation thereunder are highly beneficial to the mortgaged property. Therefore, the compensation therefor is an operating expense of the receiver and, as such, entitled to priority of payment over lien and unsecured creditors out of income and, if that be insufficient, out of the corpus of the property.

[20, 21] Appellant prays not only allowance of the principal sum of $60,000 but interest upon the installments making up that sum from the dates each installment became due and payable. As to those installments due prior to the receivership, this allowance, at the legal rate in Colorado (8 per cent.), should be paid from the date each installment became due until it is paid. Am. I. & S. M. Co. v. Seaboard Air Line Ry. Co., 233 U. S. 261, 34 Sup. Ct. 502, 58 L. Ed. 949. The balance ($40,000) is not due under the contract but represents the value of the benefit of the franchise rights being used by the receiver and the time of payment of this operating expense of the receivership—is covered by no contract but is addressed to the sound judicial discretion of the court

which is conducting the receivership and is familiar with the conditions and exigencies attending the administration of the property and business. Therefore, no interest is allowable upon compensation arising from usage by the receiver. If the franchise should be adopted by the court, interest would be due on the payments accruing during the receivership at the above rate from the dates due until paid.

The order or decree denying appellant's claim and dismissing its application is reversed with instructions to reinstate the claim; to allow the portion thereof accruing before the receivership, with interest at 8 per cent. on installments from date payable, as a preferred claim next after claims secured by liens which had attached before the filing of appellant's application herein; to allow the balance of said claim at the rate of $5,000 per month, with no interest, as a claim entitled to preference of payment as an operating expense of the receivership from the income during the receivership and, if that be insufficient, from the corpus of the property—such preference to be junior only to costs in the receivership proceeding and to taxes.