### CITY OF SEATTLE et al. v. PUGET SOUND POWER & LIGHT CO.*

(Circuit Court of Appeals, Ninth Circuit. December, 4, 1922.)

No. 3879.

1. **Injunction ⬡12—Mandatory injunction by federal court, anticipating breach of contract, held unauthorized under issues.**

   In a suit against a city for specific performance of a contract by which the city purchased a street railway system, issued bonds therefor, and obligated itself to create from the gross earnings of the system a special fund for payment of interest on the bonds, and also a sinking fund for their retirement at maturity, and to make periodical transfers of money from such gross earnings into said funds, where all maturing payments had been met, and the bill alleged that the earnings from operation were more than sufficient to meet all proper charges against them, the court was without authority to anticipate a breach, and to issue a mandatory injunction requiring the city, if necessary in the future to the maintenance of the special funds, to pay the cost of maintaining and operating the system from its general funds.

2. **Injunction ⬡77(1)—Officers in performance of duties should be free from unnecessary interference by courts.**

   Officers of a municipality have a right to discharge their duties voluntarily and in their own way, without compulsion from federal courts, unless they have been derelict in the discharge of those duties.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

Suit in equity by the Puget Sound Power & Light Company against the City of Seattle and others. Decree for complainant, and defendants appeal. Reversed and remanded.

For opinion below, see 282 Fed. 712.

Section 8006, Rem. Code of the State of Washington, provides that it shall not be necessary to submit the proposition to the qualified voters for their ratification or rejection, where in the charter of any city or town heretofore

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied February 19, 1923.

or hereafter adopted by a vote of the people an article or provision has been adopted authorizing the city council or other corporate authorities of such city or town to provide by ordinance for acquiring, opening, or operating a street railway system, or other public utility, for which no general indebtedness is to be incurred by such city or town. Pursuant to this statute and the city charter, the city of Seattle passed an ordinance on the 31st day of December, 1918, providing for ·the acquisition of and payment for certain street railway lines and street railway property and equipment, the issuing of bonds in payment therefor, and creating a special fund to pay the principal and interest of such bonds. Section 2 of the ordinance provides:

"The gross revenues to be derived from the operation of the municipal street railway system of the city of Seattle, including the additions and betterments to, and extensions thereof herein provided for, at the rates of trans-portation charged, and to be charged, upon the entire system, will be sufficient in the judgment of the council and of the corporate authorities of the city to meet all expenses of operation and maintenance, including the operation and maintenance of the proposed additions, betterments and extensions, and to provide all proportions or parts of revenue previously pledged as a fund for the payment of bonds, warrants and other indebtedness, with interest thereon, heretofore made payable out of the revenues of the existing municipal street railway system, and to permit the setting aside in a special fund, out of the gross revenues of the entire system, amounts sufficient to pay the interest on the bonds hereby authorized to be issued, as such interest becomes due and payable, and to pay and redeem all of such bonds at maturity. The amounts which the city council and corporate authorities have determined and do hereby determine will be so available for the payment out of such gross revenues into such special fund, to be used for the payment of the interest on such bonds, will, on the 1st days of February and August in each and every year, beginning with August in the year 1919, be not less than the interest at the rate of five per cent. (5%) per annum, payable semiannually, on the 1st days of March and September, respectively, next .succeeding such days, on all outstanding bonds of the issue of fifteen million dollars ($15,000,000), to be issued payable at the times and in the manner hereinafter specified.

"The city council and corporate authorities have likewise determined and do hereby determine that the amount so available for the payment out of such gross revenues into such special fund to be used for the payment of the principal of such bonds, on the 1st day of February, 1922, will be not less than eight hundred thirty-three thousand dollars ($833,000), and that there will be so available thereafter for payment out of such gross revenues into such special fund to be used for the payment of the principal of such bonds not less than eight hundred thirty-three thousand dollars ($833,000), on the 1st day of February in each and every year, to and including the year 1938, and not less than eight hundred thirty-nine thousand dollars ($839,000) on the 1st day of February, 1939."

Section 5 provides:

"There shall be, and is, hereby created and established, a special fund to be called 'Municipal Street Railway Bond Fund, 1919.' The city of Seattle, after providing for the payment of the proportions or parts of the revenues of the municipal street railway system previously pledged as a fund for the payment of bonds, warrants, or other indebtedness, does hereby irrevocably obligate and bind itself to pay into such fund out of the gross revenues of such municipal street railway system, and all additions, betterments to, and extensions of, ·such system, at any time hereafter acquired, before each semi-annual installment of interest falls due, a sum equal to such semi-annual installment of interest upon all such bonds then outstanding and unpaid ; and annually on or before the 1st day of March, beginning with March 1, 1922, and to and including March 1, 1938, the additional sum of eight hundred thirty-three thousand dollars ($833,000), and on or before the 1st day of March, 1939, the additional sum of eight hundred thirty-nine thousand dollars ($839,-000), for the payment of the principal of such bonds, at which time all of such bonds with interest shall be fully paid. Such fund is to be drawn upon for the sole purpose of paying the principal and interest of such bonds from

and after the date of such bonds and so long as obligations are outstanding against such fund. The city treasurer of the city of Seattle shall, semi-annually, one calendar month prior to the date upon which any interest, or principal and interest, shall become due, set aside and pay into such fund from the gross revenues of the entire municipal street railway system of the city of Seattle, now belonging to it, including the additions, betterments and extensions herein provided for, and any street railway property which it may hereafter acquire, with the equipment thereof, a sum equivalent to the amount of interest so falling due, upon all bonds issued hereunder, and then outstanding, and annually one calendar month prior to the 1st day of March in each and every year, beginning with the year 1922, and to and including the year 1938, the sum of eight hundred thirty-three thousand dollars ($833,000), and one calendar month prior to the 1st day of March, 1939, the sum of eight hundred thirty-nine thousand dollars ($839,000), as the principal of such bonds falls due, and until all of such bonds with interest thereon be fully paid. *   *   * "

In the bonds, the form of which is prescribed in the ordinance, the city covenants with the holders that it will keep and perform all of the covenants, conditions, and promises in said ordinance contained to be by it kept and performed. Also:

"The city of Seattle and corporate authorities have provided for the payment of the amount or proportional part of the revenues of the municipal street railway system previously pledged as a fund for the payment of bonds, warrants or other indebtedness, and after having so provided, do hereby irrevocably obligate and bind the city to pay into the special fund created by the ordinance authorizing the issuance of this bond and out of the gross revenues of such municipal street railway system and all additions and betterments to, and extensions of, such system hereafter acquired, even though the balance of such gross receipts thereafter remaining may be insufficient to pay the cost of maintaining and operating said system and said additions and betterments thereto and extensions thereof. *   *   * "

The city further obligated itself "*   *   * to establish and maintain rates for transportation upon such municipal street railway system which shall provide sufficient revenues to permit the payment into such special fund of the stipulated sums which the city has pledged to be set aside semiannually for interest and annually for principal, as provided in such ordinance to be applied to the payment of principal and interest of the bonds authorized by such ordinance, until such bonds have been paid in full."

After the passage of this ordinance an action was commenced in the state court to restrain the municipal authorities and the street railway company from carrying out the provisions of the ordinance and contract of purchase upon the ground that the ordinance and bonds created an indebtedness against the city which had not been authorized by a vote of the qualified electors. The Supreme Court of the state approved the ordinance and contract of purchase in all respects and affirmed a judgment dismissing the action, saying: "We are satisfied the proposed plan and bonds will not create any indebtedness against the city and that the city council has authority to consummate the purchase without the sanction of the qualified voters." After the rendition of this judgment the street railway system was taken over by the city and bonds issued pursuant to the terms of the ordinance. All interest accruing on the bonds from the date of their issue up to the time of the trial in the court below has been paid in full and without default.

Early in 1921 one Asia and others, taxpayers of the city, commenced an action in the state court to enjoin the city from encroaching upon its general funds or from paying any part of the expense of operating and maintaining the municipal street railway system out of such general funds. Immediately thereafter the present plaintiff commenced a suit in the court below to restrain the prosecution of this latter action and for other purposes. The complaint was dismissed, and the decree of dismissal was affirmed by this court (Puget Sound Power & Light Co. v. Asia, 277 Fed. 1). After the dismissal of the last-mentioned suit the present suit for specific performance was instituted against the city and its officers. Upon final hearing a manda-

tory injunction was granted, directing the city and its officers, out of its general funds or from some other available source, to pay the cost of maintenance and operation, if the gross revenues of the system were insufficient for that purpose. After the entry of this decree the Supreme Court decided the action commenced by Asia and others, and directed the entry of a decree enjoining the city and its officers from in any manner encroaching upon the general funds of the city or placing the burden of operating and maintaining the municipal street railway system in any degree upon the taxpayers. Asia v. City of Seattle (Wash.) 206 Pac. 366. The decree of the court below is now before us for review.

Walter F. Meier, Corp. Counsel, Thomas J. L. Kennedy and Charles T. Donworth, Asst. Corp. Counsel, and Robert H. Evans, Sp. Asst. Corp. Counsel, all of Seattle, Wash., for appellants.

James B. Howe, Hugh A. Tait, and John H. Powell, all of Seattle, Wash., for appellee.

Stephen J. Chadwick, Maurice McMicken, H. J. Ramsey, Otto B. Rupp, Harold Preston, O. B. Thorgrimson, Leander T. Turner, Wilmon Tucker, and Ivan L. Hyland, all of Seattle, Wash., amici curiæ.

Before GILBERT and HUNT, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge (after stating the facts as above). [1] As already stated, the mandatory injunction granted by the court below is most sweeping and general in its terms. It orders and directs the city and its officers to specifically perform all of the duties and obligations imposed upon them and each of them by the ordinance in question and the bonds issued pursuant thereto, regardless of whether there had been a breach or a threatened breach. Over and beyond this the city and its officers are specifically ordered and directed to pay the expense of operation and maintenance out of the general funds of the city, or from some other available source, in the event the gross earnings of the system prove insufficient for all purposes; this, too, in the face of a direct averment in the complaint that the gross earnings are ample and more than sufficient to meet all proper charges against them. Such a decree cannot stand. If the gross earnings were ample and more than sufficient to meet all proper charges against them, the court below should not have concerned itself with rates or fares, or payments from the general fund. The utmost it could or should do under the circumstances was to direct a proper application of the revenues at hand.

In so deciding we are not unmindful of the rule that, when a court of equity assumes jurisdiction for any purpose, it will usually grant full and complete relief; but this does not mean that a court will go out of its way to determine important questions of doubtful import, which have not arisen and which may never arise. Here we have a mandatory injunction from a federal court, commanding the municipal officers of a state to perform certain acts and discharge certain duties, the performance and discharge of which have been enjoined by the highest court of the state. It is needless to say that officers should not be placed in such a plight in the discharge of their official duties. It may be that a federal court can grant a mandatory injunction com-

manding state officers to perform duties the performance of which has been enjoined by a state court; but the power is a delicate one, and will only be exercised in a case involving a present controlling necessity for such action and no such case is presented here.

[2] In so far as the decree simply orders and directs the transfer of funds to the special bond fund one month before the due date of principal and interest, and the payment of such principal and interest when due, it perhaps works no injury, as it simply directs the municipal officers to do what they admit they are already obligated to do. But such officers have a right to discharge their duties voluntarily and in their own way, without compulsion from the courts of another sovereignty, unless they have been derelict in the discharge of those duties. What justification is there, then, for this mandatory injunction? Our attention has been directed to the action of certain taxpayers in bringing suit to enjoin the city from encroaching upon its general funds to defray the expense of operating and maintaining the municipal railway system, to certain charges preferred by the mayor, and to the failure of the city treasurer to set aside funds for the payment of interest and principal on the bonds one calendar month before the due date.

City officers are not ordinarily responsible for the action of taxpayers of the city, and, furthermore, the contention of these taxpayers has been fully sustained by the Supreme Court of the state. The mayor of the city charged that the city had been defrauded in the purchase of the street railway system, and the city council appropriated funds to investigate these charges. In so doing the municipal officers acted within their rights, and, furthermore, before the final hearing in the court below, the mayor had reported to the city council that the charges had been investigated by his personal representative and by a grand jury, and had not been sustained. Here the incident closed, so far as the record discloses. The city treasurer, without apparent objection, failed to transfer the funds to the special bond fund one month before the due date of the principal and interest on the bonds, and gave two reasons for his failure: First, that he was acting under the Fiscal Agency Law of the state (Rem. Code, § 5021); and the other, that the funds could only be transferred by warrants authorized by city ordinance. Whether these reasons are good or bad we need not inquire, because the city has since passed an ordinance directing a proper transfer of the funds. As already stated, all payments have been made in conformity to the terms of the bonds and ordinance without default, and we see no present necessity for judicial interference.

Again, it would seem that the remedy given by the state statute in the form of an action against the city to compel the setting aside of the fund and the payment of the principal and interest when due is a full, complete, and adequate one under the circumstances. There is nothing in the record that leads us to believe that a multiplicity of suits will follow, or that the municipal officers will fail or refuse to discharge the duties imposed upon them by law and by the mandate of a court of competent jurisdiction. For these reasons, the complaint should be dismissed for want of equity, but without prejudice to any

right of action the appellee may hereafter have for future breaches of the ordinance or bonds.

Reversed and remanded.