## PUGET SOUND POWER & LIGHT CO. *v.* SEATTLE.

No. 344.  Argued January 12, 15, 1934.—Decided March 19, 1934.

---

*Mr. Clarence R. Innis,* with whom *Messrs. Elmer E. Todd, Frank E. Holman,* and *William M. Allen* were on the brief, for appellant.

*Messrs. Walter L. Baumgartner* and *A. C. Van Soelen* for appellee.

MR. JUSTICE STONE delivered the opinion of the Court.

This is an appeal under § 237 of the Judicial Code from a judgment of the Supreme Court of Washington, 172 Wash. 668; 21 P. (2d) 727, sustaining a municipal license or excise tax, assailed by appellant as infringing the Fourteenth Amendment and the contract clause of the Federal Constitution.

An ordinance of the City of Seattle of May 23, 1932, imposes an annual license tax upon the privilege of carrying on the business of selling or furnishing electric light

and power to consumers. The tax is 3% of the gross income from the business " in the city " during the fiscal year next preceding the tax year for which the license is required. The suit, brought to recover an installment of the tax already paid and to enjoin the collection of future installments, was heard and decided upon demurrer to appellant's complaint.

Both appellant, a Massachusetts corporation, acting under a municipal franchise, and appellee, the City of Seattle, acting by state authority, are engaged and actively compete in the business of furnishing electric light and power to consumers for hire. By state law the city is given plenary power to fix rates for the electric current which it distributes, and its rates are not subject to regulation and control by the Public Service Commission, as are those of appellant. § 10390, Remington's Rev. Stat. of Washington. Revenues of the city from its electric light business are required by the city charter, Art. VIII, § 9, to be deposited in a special " city light fund," separate from the general funds of the city, and transfer from one fund to the other, except by direction of the city council, is forbidden by the city charter. Art. IX, §. 17. Section 6 of the ordinance, in terms, imposes the same tax on the city " so far as permitted by law," as that levied on appellant. But it appears that the city, acting under a state statute, § 9491, Remington's Rev. Stat. of Washington, enacted before the taxing ordinance, has issued bonds, the payment of which, both principal and interest, is secured by the revenue of its electric light business. Appellant contends that by the statute, municipal ordinance, and the terms of the bonds themselves, this pledge is superior to all other charges upon the gross revenue and that the city cannot lawfully pay the tax. It appears that in fact the city has not paid the tax or made any provision for paying it. The state court, in passing on this question, said:

"The city has not allocated, and probably cannot allocate, any of the revenues of its power and light business to the payment of such a tax. Bonds have been issued in excess of $30,000,000 against the revenues from that business; and those bonds are a prior lien on the entire income from it—taking precedence even over operating charges. Conceding that the city's light and power revenues could be subjected to the tax, no machinery is set up in the ordinance to accomplish such an end. Furthermore, in making up its budget for 1932, no provision was made for the levy of general taxes to cover the excise provided for in the ordinance. So the problem must be met as though § 6 had been omitted from the ordinance; . . ." [p. 671]

Whether by this statement the court intended to decide that the city could not lawfully pay the tax, or assumed that to be the case for the purpose of the decision, it is unnecessary to determine, for appellant further insists that even though the tax were paid by the city to itself it would impose no actual burden.

Asserting that no effective tax is imposed with respect to the business carried on by the city, appellant argues that the taxation of its competing business is a denial of equal protection and deprives it of its property without due process. The tax is also assailed because the measure of it is vague and uncertain and because, by imposing a license tax upon the privilege of doing the business, the ordinance impairs appellant's franchise contract which gave it the right to conduct the business.

In sustaining the constitutionality of the tax, the state court found it unnecessary to ascertain whether, under the city charter and ordinances, and state law, the tax if paid by the city must be paid from its city light fund rather than from its general fund, or to what extent moneys may now or hereafter be transferred from one

fund to the other, or how far the general fund raised by taxation may be used otherwise, either directly or indirectly, to aid the city's electric lighting business. We do not attempt to resolve these questions here. Decision that the city is not authorized by existing law to aid its light fund by taxation, without disposing of the constitutional question decided by the state court, would entail the decision of other questions, arising under the equal protection and contract clauses, not raised or considered in the case. Moreover the appellant insists that in any case payment of the tax would neither relieve appellant of its burden nor impose a comparable burden on the city, since the same hand would both pay and receive the tax, and there is no constitutional limitation on the power of the city to use the tax when collected for the maintenance of the city's business. *Standard Oil Co.* v. *City of Lincoln,* 114 Neb. 245; 207 N.W. 172, 208 *id.* 962; aff'd *per curiam,* 275 U.S. 504. All the questions thus suggested are met and disposed of by decision of the constitutional question which the state court decided and which we decide here.

1. There is no contention that appellant's franchise or any contract relieves it generally from the duty of paying taxes. It is not contended that a state or municipality, merely because it fails or is unable to tax its own property or business, is prohibited from taxing like property or business. The contention here is that constitutional limitations are transgressed only because the tax affects a business with which the taxing sovereign is actively competing. For that reason it is argued that the taxation involves a forbidden discrimination and deprives appellant of its property without due process since the combined power of the city to tax and to compete may be used to destroy appellant's business. As appellant asserts that the tax can impose no effective burden on the city, its

contention is, in effect, that the city, by virtue of the Fourteenth Amendment, upon entering the business forfeited its power to tax any competitor.

In conducting the business by state authority the city is exercising a part of the sovereign power of the state which the Constitution has not curtailed. The decisions of this Court leave no doubt that a state may, in the public interest, constitutionally engage in a business commonly carried on by private enterprise, levy a tax to support it, *Green* v. *Frazier*, 253 U.S. 233; *Jones* v. *Portland*, 245 U.S. 217, and compete with private interests engaged in a like activity. *Standard Oil Co.* v. *Lincoln, supra; Madera Water Works* v. *Madera*, 228 U.S. 454; *Helena Water Works Co.* v. *Helena*, 195 U.S. 383.

We need not stop to inquire whether the equal protection clause was designed to protect the citizen from advantages retained by the sovereign, or to point out the extraordinary implications of appellant's argument when applied to expansions of government activities which have become commonplace. It is enough for present purposes that the equal protection clause does not forbid discrimination with respect to things that are different. The distinctions between the taxing sovereign and its taxpayers are many and obvious. The private corporation, whatever its public duties, carries on its business for private profit and is subject to the obligation, common to all, to contribute to the expense of government by paying taxes. The municipality, which is enabled to function only because it is a tax gatherer, may acquire property or conduct a business in the interest of the public welfare, and its gains if any must be used for public ends. Hence equal protection does not require a city to abstain from taxing the business of a corporation organized for profit merely because in the public interest the municipality has acquired like property or conducts a like business.

These differences are not lessened nor the constitutional exaction of uniformity increased because the city competes with a business which it taxes. Compare *Springfield Gas Co. v. Springfield*, 257 U.S. 66; *Hollis v. Kutz*, 255 U.S. 452; *Emergency Fleet Corp. v. Western Union*, 275 U.S. 415. The state may tax different types of taxpayers differently even though they compete. *State Board of Tax Commissioners v. Jackson*, 283 U.S. 527; *Alaska Fish Salting & By-Products Co. v. Smith*, 255 U.S. 44; *Hammond Packing Co. v. Montana*, 233 U.S. 331; *Quong Wing v. Kirkendall*, 223 U.S. 59. It could not plausibly be argued that a private nonprofit corporation distributing electric current to consumers at cost could not be exempted from taxes borne by others serving the same wants. Compare *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 40; *German Alliance Ins. Co. v. Kansas*, 233 U.S. 389, 418; *Citizens Telephone Co. v. Fuller*, 229 U.S. 322. A business which in private hands might be exempted from taxation because not conducted for private profit is no less privileged because its capital is supplied by the government which controls it in the public interest. These considerations are in no way affected by calling the city's activity " proprietary " instead of " governmental." Compare *South Carolina v. United States*, 199 U.S. 437, with *Murray v. Wilson Distilling Co.*, 213 U.S. 151 and *Metcalf & Eddy v. Mitchell*, 269 U.S. 514.

The injury, which appellant fears may result, is the consequence of competition by the city, and not necessarily of the imposition of the tax. Even without the tax the possibility of injury would remain, for the city is not bound to conduct the business at a profit. The argument that some way must be found to interpret the due process clause so as to preclude the danger of such an injury fails to point the way. Legislation may protect from the consequences of competition; but the Con-

stitution does not. *Helena Water Works Co.* v. *Helena, supra; Vicksburg* v. *Henson,* 231 U.S. 259. The Fourteenth Amendment does not purport to protect property from every injurious or oppressive action by a state, *Memphis Gas Co.* v. *Shelby County,* 109 U.S. 398, 400; *St. Louis* v. *United Railways Co.,* 210 U.S. 266, 276, nor can it relieve property of congenital defects, *Madera Water Works* v. *Madera, supra,* 456. It does not preclude competition, however drastic, between private enterprises or prevent unequal taxation of competitors who are different. Those were risks which appellant took when it entered the field. No articulate principle is suggested calling for the conclusion that the appellant is not subject to the same risks because the competing business is carried on by the state in the exercise of a power which has been constitutionally reserved to it from the beginning.

Such was the decision in *Madera Water Works* v. *Madera, supra,* where this Court pointed out that in the absence of any contract restriction the Fourteenth Amendment does not prevent a city from conducting a public water works in competition with private business or preclude taxation of the private business to help its rival to succeed. See also *Springfield Gas Co.* v. *Springfield, supra.* Such must be our decision now.

2. The definition of gross income by § 2 of the ordinance, which is assailed as vague and indefinite, is that considered in *Pacific Telephone & Telegraph Co.* v. *Seattle, ante,* p. 300. By §§ 10 and 20 the comptroller of the city is required to make rules and regulations, having the force of law, for carrying the ordinance into effect, and to provide blank forms of return upon which the taxpayer is to enter such information as the comptroller may require to enable him to compute the tax. As appellant alleges that it has received its license and paid the first installment of the tax, it appears that a practical construction has been

given to the ordinance by an administrative officer competent to give it, which the state court has upheld. It is thus apparent that the ordinance, as construed, is sufficiently definite to enable the appellant to comply with it and as appellant's return for taxation and the method of computing the tax are not disclosed by the record no constitutional infirmity in the ordinance is revealed. See *Edelman* v. *Boeing Air Transport, Inc.*, 289 U.S. 249; *Pacific Telephone & Telegraph Co.* v. *Seattle, supra.*

3. Appellant asserts a contract under its franchise to use the streets of the city for the purpose of carrying on its business for an unexpired term of years. It argues that the franchise is a contract license to carry on the business, and that the exaction of a tax as a condition precedent to the enjoyment of the license will operate to destroy the privilege granted by the franchise. This argument was made and answered in *Memphis Gas Co.* v. *Shelby County,* 109 U.S. 398, and in *St. Louis* v. *United Railways Co.,* 210 U.S. 266. Surrender of the state's power to tax the privilege is not to be implied from the grant of it. Hence, appellant took its franchise subject to the power of the state to tax the granted privilege in common with all other privileges and property in the state. Without a clearly expressed obligation on the part of the city to surrender that power the contract clause does not limit it. See *Wiggins Ferry Co.* v. *East St. Louis,* 107 U.S. 365; *New Orleans City & Lake R. Co.* v. *New Orleans,* 143 U.S. 192; *Postal Telegraph Cable Co.* v. *Charleston,* 153 U.S. 692; cf. *Knoxville Water Co.* v. *Knoxville,* 200 U.S. 22.

*Affirmed.*

MR. JUSTICE VAN DEVANTER, specially concurring.

I concur in the judgment of affirmance, but not in the principal part of the court's opinion.

The appellant, the power company, assails the ordinance imposing the tax on the following grounds:

1. The ordinance contravenes the equal protection clause of the Fourteenth Amendment to the Constitution of the United States in that it lays the tax on the appellant's electric light and power business but not on the like and competing business of the city.

2. The ordinance offends the due process clause of that Amendment in that it prescribes severe penalties and liabilities for nonpayment of the tax and yet defines " gross income," on which the tax is to be computed, so vaguely that the amount of the tax cannot be ascertained with reasonable certainty.

3. The ordinance impairs the franchise contract entitling the appellant to conduct its business within the city for a term of fifty years, and thereby infringes the contract clause of the Constitution, in that it makes the continued enjoyment of the franchise depend on the payment of the tax.

The assault is confined to this taxing ordinance. Other ordinances, some provisions in the city's charter, and still other enactments, have a real bearing on the matter, but their validity under the Constitution of the United States is not called in question.

I agree that the second and third grounds of the assault must be held untenable for the reasons stated in the opinion; and I further agree that the first ground must fail— but for reasons essentially different from those which the opinion announces.

The first ground proceeds on the theory that the city is free to accord equal treatment to the two competitive businesses, but by its ordinance unreasonably and arbitrarily discriminates against the business of the appellant and in favor of its own business by subjecting the former to the tax and omitting or refusing to subject the latter to a like burden. It therefore is of first importance to ascertain what the ordinance provides and what are the

circumstances which surrounded its adoption and in which it is to be applied.

The ordinance was approved by the Mayor May 25, 1932, and was to become effective July 1 of that year. It provides in § 2 that the word " person " in the several sections shall be taken to include a corporation unless the context plainly shows otherwise; in subdivision (c) of § 5 that the tax shall be applied to " every person engaged in or carrying on " the business of selling or furnishing electric light and power within the city; and in § 6 that subdivision (c) of § 5 " shall, as far as permitted by law, be applicable to the City of Seattle, except that said City shall not, as a taxpayer, be required to conform to the other provisions of this ordinance "—the " other provisions " obviously being those which require sworn returns, application for license, etc.

The electric light and power business of the appellant and the like business of the city have been and are highly competitive, and are the only ones in the field. Both had their inception in ordinances adopted in 1902—the one under which the city entered the field being a little older than the one granting the franchise under which the plaintiff has proceeded. Both businesses have been greatly extended and enlarged in relative keeping with the growth of the city.

The city's business is conducted, as is required by statutory and charter provisions, as an independent unit distinct from all other activities of the city, whether governmental or proprietary; and the accounts, revenues, expenses and funds pertaining to the business are kept, handled and adjusted, as is similarly required, separately from other accounts, revenues, expenses and funds of the city. This independence and separation is not merely formal, but real and persistent. The city in its governmental capacity is a customer of its proprietary light

and power business and obtains therefrom electric current needed for street lighting and other municipal purposes. For this current the city in its governmental capacity pays each year a sum which is determined after a public hearing in which all who are interested are given an opportunity to participate. The payment is effected by transferring money from the city's tax-supported general fund, which is devoted to governmental uses, to the separate fund into which the revenues of the proprietary light and power business are required to be paid. The amount to be paid for such current in 1932 was given in the city's budget as $438,750.

The decisions of the Supreme Court of the State leave no doubt that the situation is as just stated. In *Uhler* v. *Olympia,* 87 Wash. 1; 151 Pac. 117, 152 *id.* 998, which relates to a proposed city-owned water system designed to supply for hire both private and municipal needs, that court says (p. 4): " The revenues to be received under the plan proposed . . . do not partake of the character of general funds, nor can the general fund be invaded if they are not sufficient"; and again (p. 14): " The city, in meeting functions that are called governmental, is taking [water] from the city . . . in its proprietary capacity; therefore the general fund of the city may be charged and the special fund credited with a reasonable charge for the water used [by the city] where it is so provided in the ordinance. The city, as a governmental entity, stands in the same relation to the system as a private citizen who is patronizing it." And that court further holds that, while it is admissible under the laws of the state for a city to make " temporary loans " from the tax-supported general fund to a special utility fund or vice versa, or from one special utility fund to another, if the borrowing fund is solvent and has an assured income from which repayment may be made, it is not admissible to

make loans from one of these funds to another which is insolvent, or to make contributions or permanent diversions from one to another; and that attempted infractions of these restrictions may be prevented by injunction. *Asia* v. *Seattle*, 119 Wash. 674, 679–680; 206 Pac. 366; *Griffin* v. *Tacoma*, 49 Wash. 524, 529; 95 Pac. 1107; *Uhler* v. *Olympia*, 87 Wash. 1, 7; 151 Pac. 117, 152 *id.* 998; *Von Herberg* v. *Seattle*, 157 Wash. 141, 147, 150–151; 288 Pac. 646.

Since 1916 the city has financed the extension and development of its electric light and power business by issuing and selling revenue bonds, without submitting the matter to the electorate or creating an indebtedness on the part of the city. The total of such bonds outstanding at the end of 1931 was approximately $32,000,000. By law and by their own terms these bonds are payable only from a bond fund specially created from revenues derived by the city from its electric light and power business.

The appellant in its complaint alleges that the gross revenues of the business are by law, underlying ordinances, and the terms of the bonds, pledged to the payment of the bonds, principal and interest; and that " such pledge constitutes a charge upon such gross revenues prior and superior to all other charges whatsoever, including charges for maintenance and operation." Counsel for the city, while not questioning the allegation in other respects, insist that under the applicable law the pledge is not of the gross revenues, but at most is only of what remains after paying costs of maintenance and operation, and that the tax in question if laid on the city's business pursuant to the ordinance may be paid from the gross revenues like other costs of maintenance and operation.

Section 9491 of Remington's Revised Statutes of Washington, under which appellant alleges the bonds were issued, makes provision for setting aside and paying into a

special bond fund "any fixed proportion" or "any fixed amount" of the "gross revenues" from the business in aid of which bonds are issued, and for making the bonds payable "only out of such special fund." These provisions are followed by another in the same section declaring:

"In creating any such special fund or funds the common council or other corporate authorities of such city or town shall have due regard to the cost of operation and maintenance of the plant or system as constructed or added to, and to any proportion or part of the revenue previously pledged as a fund for the payment of bonds, warrants or other indebtedness, and shall not set aside into such special fund a greater amount or proportion of the revenue and proceeds than in their judgment will be available over and above such cost of maintenance and operation and the amount or proportion, if any, of the revenue so previously pledged."

The charter of the city also contains a provision, § 18 (Fifteenth), enabling the city to establish, operate and maintain a plant or system for furnishing electric power and light for industrial, individual and municipal uses, "and to provide and secure payment therefor in whole or in part by net earnings therefrom."

Section 9491, under which the appellant alleges the revenue bonds were issued, is not confined to enabling cities to supply an electric light and power service, but is also directed to enabling them through the issue of like bonds to supply a street railroad service or a water service. In 1919 the appellant, which then owned a street railroad system in Seattle as well as an electric light and power system, sold and transferred its street railroad system to the city and received in payment fifteen million dollars of revenue bonds with a supporting pledge like that which the appellant sets forth in its complaint in

the present case.[1] Controversy soon arose as to whether that pledge includes the entire gross revenue of the street railroad system or only what remains after paying the cost of maintenance and operation; and much litigation ensued in which the appellant persistently sought to establish the broader construction of the pledge.[2] The litigation resulted in decisions recognizing and sustaining the pledge in several respects,[3] but leaving undetermined the question whether it includes all of the gross revenue or only what is left after the cost of maintenance and operation is paid. The case of *Von Herberg* v. *Seattle,* 157 Wash. 141, decided in 1930, appears to have been the last of the series. The appellant was a party and set up its contention as in the other cases. In concluding the decision the court said: " We accordingly express no opinion upon the question of whether or not wages and operating expenses of the street railway must be paid before the application of any money in the street railway fund to the payment of the bonds evidencing the purchase price of the system."

In view of that acute and undetermined controversy and its obvious bearing on the pledge given in support of the revenue bonds pertaining to the city's electric light and power business, it is easy to perceive why the city in adopting the ordinance of 1932 and providing in § 6 that the tax should be applicable to the city's business, inserted the words " as far as permitted by law." Evi-

---

[1] *Twichell* v. *Seattle,* 106 Wash. 32; 179 Pac. 127; *Old Colony Trust Co.* v. *Seattle,* 271 U.S. 426.

[2] *Puget Sound Power & Light Co.* v. *Seattle,* 284 Fed. 659; *Von Herberg* v. *Seattle,* 27 F. (2d) 457; *Puget Sound Power & Light Co.* v. *Von Herberg,* 278 U.S. 644; *Puget Sound Power & Light Co.* v. *Seattle,* 29 F. (2d) 254;

[3] *Twichell* v. *Seattle,* 106 Wash. 32; 179 Pac. 127; *Asia* v. *Seattle,* 119 Wash. 674; 206 Pac. 366; *Von Herberg* v. *Seattle,* 157 Wash. 141; 179 Pac. 127.

dently the city understood that, if the entire gross revenue from the business was pledged, it might be for that reason unable to pay out any part of the revenue for another purpose. It also is easy to perceive that the appellant, by reason of its interest in the street railroad revenue bonds, may have regarded the present suit as a suitable vehicle for getting its contention respecting such a pledge before a court and possibly establishing indirectly what it had been unable to establish through its earlier and direct efforts. Certainly the appellant could not reasonably have expected to enhance its chances of success in the present suit by introducing such a contention respecting the pledge given in support of the electric light and power revenue bonds.

Of the circumstances in which the ordinance was adopted and of the provision in § 6 declaring the tax applicable to the city's business, the state court said in the present suit:

" The city, in its proprietary capacity, is in competition with appellant in the power and light business. The possible consequences to appellant, if it is subjected to an excise of three per cent on its gross revenues, while its competitor escapes the burden, are too obvious for discussion. Evidently having such consequences in mind, the city council, by virtue of § 6 of the ordinance, has undertaken to subject the city's power and light business to the tax imposed upon persons and corporations engaging in that business. This is merely a more or less friendly gesture. The city has not allocated, and probably cannot allocate, any of the revenues of its power and light business to the payment of such a tax. Bonds have been issued in excess of $30,000,000 against the revenues from that business; and those bonds are a prior lien on the entire income from it—taking precedence even over operating charges." [p. 671.]

Counsel differ widely respecting so much of this excerpt as speaks of the existing pledge as an obstacle to applying the tax to the city's business. Counsel for the city say this statement rests only on an allegation in the appellant's complaint and was made in the absence of a full presentation of the matter and without intention to render a decision thereon; and they present arguments and citations giving color to their assertion. On the other hand, counsel for the appellant insist the statement is decisive and point to its letter as justifying them in so insisting. It is obvious that the statement, when separately considered, makes strongly for the latter view; but when it is read in connection with prior decisions, which it does not mention, and with charter and statutory provisions, which are not noticed, there arises a real doubt whether it was made as a decisive utterance or as a recital of what was alleged and only assumed to be true.[4] This is a matter on which only the state court can speak with ultimate authority; and as its solution, as will appear later on, is not essential for present purposes, it properly may be put to one side. When this is done, the appellant's charge of unreasonable discrimination amounting to a denial of equal protection needs to be examined with three suggested views of the existing pledge in mind—one treating it as including only the net revenues from the city's business, as the city asserts; another treating it as including the entire gross revenues, but subject to payment therefrom of any tax lawfully imposed on the city's business; and still another treating it as including the entire gross revenues and preventing, by reason of the contract clause of the Constitution, payment therefrom of the tax named in the ordinance, as the appellant insists.

[4] Inaccurate statements of counsel sometimes lead to erroneous assumptions by courts. *Langford* v. *Monteith,* 102 U.S. 145, 147.

The ordinance, in § 6, provides that the tax " shall, as far as permitted by law, be applicable " to the city's proprietary business. Unless the pledge be in the way it is plain that there is no legal obstacle to carrying this provision into effect.[5] The state court does not suggest the presence of any other obstacle; and counsel for the appellant do not show that there is any. On the other hand, counsel for the city concede that the ordinance imposes the tax on the city's business and assert the city's willingness to pay the tax out of the gross revenues from that business.

True, the appellant alleges in its complaint that the city budget for 1932 did not allocate any of the revenues from the city's business for such payment. But this allegation is of no significance. As counsel for the city point out, the budget was adopted late in 1931, while the taxing ordinance was not adopted until May. 25, 1932, and did not become effective until July 1 of that year. Appellant's complaint was filed shortly after the ordinance became effective and before the time fixed for making up and settling another budget.

In view of the terms of the ordinance, and of the city's attitude declared by its counsel, it is manifest that, if the pledge be only of the net revenues, the tax falls on

[5] *Louisville* v. *Commonwealth*, 62 Ky. 295; *Commonwealth* v. *Makibben*, 90 Ky. 384; 14 S.W. 372; *Clark* v. *Louisville Water Co.*, 90 Ky. 515; 14 S.W. ·502 (affirmed 143 U.S. 1); *Newport* v. *Commonwealth*, 106 Ky. 434; 50 S.W. 845, 51 *id.* 433; *Covington* v. *Commonwealth*, 107 Ky. 680; 39 S.W. 836 (affirmed 173 U.S. 231); *Western Saving Fund Society* v. *Philadelphia*, 31 Pa. St. 175, 183; *Chadwick* v. *Maginnes*, 94 Pa. St. 117; *Erie County* v. *Commissioners*, 113 Pa. St. 368; 6 Atl. 138; *Vilas* v. *Manila*, 220 U.S. 345, 356. And see *Atlantic & N. C. R. Co.* v. *Commissioners*, 75 N.C. 474; *South Carolina* v. *United States*, 199 U.S. 437; *Los Angeles* v. *Los Angeles Gas & Electric Corp.*, 251 U.S. 32; *Bank of United States* v. *Planters Bank*, 9 Wheat. 904, 907; *Curran* v. *Arkansas*, 15 How. 304, 309.

the city's business just as on the other, and that the charge of unreasonable discrimination is without any basis.

If the pledge be of the gross revenues but subject to payment therefrom of any tax lawfully laid on the city's business, thereby leaving the city free to pay the tax imposed by the ordinance out of such revenues, it still is manifest that the ordinance treats both businesses alike, and therefore that there is no discrimination.

If the pledge be of the entire gross revenues and, by reason of the contract clause of the Constitution, prevents the application of part of the revenues to the payment of the tax, it is very plain that such discrimination as results is neither arbitrary on the part of the city nor within the condemnation of the equal protection clause. The contract clause and the equal protection clause are both parts of the Constitution; and of course action taken or omitted in obedience to the contract clause cannot be regarded as a violation of the equal protection clause. Nor does the latter clause require that a right or exemption which under the other clause must be accorded to a particular business be also accorded to a similar business not otherwise entitled to it.[6]

It follows that in none of the suggested views of the pledge can the appellant's charge of unreasonable discrimination be sustained. And, this being so, there is no need for now considering which of the suggested views of the pledge is right.

MR. JUSTICE McREYNOLDS, MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER concur in this opinion:

---

[6] *Raley & Bros.* v. *Richardson*, 264 U.S. 157; *Packer Corporation* v. *Utah*, 285 U.S. 105, 109; *Des Moines National Bank* v. *Fairweather*, 263 .U.S. 103, 116–117; *Union Bank & Trust Co.* v. *Phelps*, 288 U.S. 181, 187.