GRAFF et al. v. TOWN OF SEWARD et al.

No. S–440.

District Court of Alaska. Third Division. Valdez.

Aug. 12, 1937.

206

Walter Hodge, of Cordova, and E. F. Medley, of Seattle, Wash., for plaintiffs.

L. V. Ray, of Seward, for defendants, except John W. Troy and Harold L. Ickes.

HELLENTHAL, District Judge.

Order to show cause, issued on the 14th day of June, 1937, requiring the defendants to show cause on the 28th day of June, why an injunction should not be issued enjoining them from doing the matters complained of in the complaint, pending a final hearing of the cause. The said hearing having been continued from the 28th day of June to the 26th day of July at Seward.

This matter comes on for hearing upon complaint and the returns made by the various defendants on the order to show cause. The plaintiffs allege that they are the owners of the light plant which furnishes the Town of Seward and the inhabitants thereof with electric current pursuant to a franchise granted plaintiffs' predecessors by said town; that the defendants, except the defendants, John W. Troy and Harold L. Ickes, are various officers and agents of the Town of Seward; that the defendant John W. Troy is the Public Works representative for the

Territory of Alaska and Harold L. Ickes is Federal Emergency Administrator of Public Works; that the plaintiffs have furnished electric current to the Town of Seward and the inhabitants thereof ever since a franchise was granted their predecessors in October, 1915; that the plaintiffs own a hydro-electrical unit and a deisel stand-by unit; that they are so situate as to be able to give continuous and uninterrupted service and have approximately $127,300 invested in said plant, which consists of the above-mentioned generating units together with a distributing system; that the plant is sufficient and adequate to meet all the requirements for electric service which now exits or for many years to come may hereafter exist in said town of Seward; that the rates charged by the plaintiffs for the current furnished have been regulated by the Town of Seward by its Ordinance No. 78 and that since the passage of said ordinance in November, 1936, the plaintiffs have made a voluntary reduction in rates; that the gross income of the plaintiffs from the said electric current in 1936 was $29,664.17, and that the gross income on the same amount of business under the reduced schedule will be $28,287.68; that the plaintiffs are taxpayers of the Town of Seward and the United States of America and the Territory of Alaska and are licensed by the Federal Power Commission; that the President of the United States of America has approved an Act of Congress, known as Public Act No. 63, 74th Congress, Act May 20, 1935, 49 Stat. 282, under which the Town of Seward was authorized to contract for the construction of a municipal electrical system; that on May 4th 1936, the Town of Seward enacted and the Mayor approved a resolution authorizing the issuing of $121,000 in bonds under the above act, and at the same time prescribed the rates which said proposed municipal power and light plant would charge to its customers; that on February 8th, 1935, and on July 2nd, 1936, the Town of Seward entered into contracts with the United States of America

under which contracts the Town of Seward was to receive grants and loans from the United States of America.

The plaintiffs allege that a third contract was entered into on March 4th, 1937, between the Town of Seward and the United States of America and the Administrator, amending the previous contract, under which contract the Town of Seward is to receive a grant of $30,000 and a loan of $90,000; that said contract is in full force and that the defendants are prepared to act thereunder; that under said last contract of March 4th, 1937, the Town of Seward is planning to erect a diesel electric plant and distributing system; that said town has advertised for bids, which bids were open June 7th, 1937, and the bid of Bennett and Taylor of Los Angeles, California, has been accepted and approved by the Common Council which contract provides for the construction of a plant for the sum of about $90,000; that said contract is about to be approved by the Federal Emergency Administrator of Public Works; that said contract so awarded provides for the construction of an incomplete distributing system which will not serve all the inhabitants of the Town of Seward; that the plaintiffs have from time to time protested to defendants Ross A. Gridley and Harold L. Ickes, giving reasons why the applications of the defendant Town of Seward should not be approved and should have been revoked; that no investigation by the Examining Division of the Public Works Administrator was made in the field of this project, but the project was passed entirely upon statements of the defendant Brownell, Mayor of the Town of Seward; that nevertheless the defendant Harold L. Ickes, his officers and agents have approved said project; that the plaintiffs have caused said contract of March 4th, 1937, and the schedules of rates adopted, to be studied by competent engineers, and they are informed and believe and allege that the contract of March 4th, 1937, does not provide for a self-liquidating project, that in order to make said project self-liquidating, rates would have to be charged which are

higher than the present rates charged by the plaintiffs; the plaintiffs allege that under said contract less than twenty-five percent of the loan and grant will be expended for work; that there was no emergency existing in the Town of Seward at the time the act was passed, nor at any time since, nor was there an unemployment situation facing the Town of Seward; that if the Town of Seward erects and operates the electric plant, irreparable injury and loss will result to the plaintiffs and their employees and will result in unemployment of the employees now engaged in their service.

Plaintiffs allege that the plan adopted by the defendants is unsound and that its sanction and attempted consummation by public officials is an unlawful abuse of discretion and maladministration of the powers and privileges granted by the National Industrial Recovery Act, 48 Stat. 195, as extended by the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, 15 U.S.C.A. §§ 721–728, and is a perversion of the declared purposes and policies of said act as extended; that the municipal electrical diesel project will be a purely local enterprise that will not engage in Interstate Commerce, that its construction and operation will not promote the general welfare of the United States; is not included within the comprehensive program of public works; that said project is not such a project as may be constructed or financed or aided by the administrator under the provision of Section 203 of said National Industrial Recovery Act, 40 U.S.C.A. § 403, nor under the Emergency Relief Appropriation Act of 1935; and that if said acts authorize such construction and operation, said acts to that extent are unconstitutional, null and void and that should such municipal diesel electric plant be constructed and operated, be constructed with any such federal funds, so obtained, then such construction and operation will be illegal competition on the part of the defendants with the properties, franchises and business of

the plaintiffs and will wrongfully cause the plaintiffs great and irreparable injury.

Plaintiffs also allege that the defendant Mayor and the defendants Councilmen of the Town of Seward have entered into a conspiracy to injure the plaintiffs through illegal and fraudulent means; that said defendants sent defendant Brownell to the City of Washington, D. C., for the purpose of presenting the proposition of a municipal electric plant to said defendant Harold L. Ickes and other officers of the Government for the purpose of securing the Act of Congress previously referred to, and that the defendant Brownell made false and fraudulent statements concerning the business of the plaintiffs and their method of operating the same, and as a result of which said Public Act No. 63 was adopted by Congress and approved by the President of the United States, said representations were in regard to the corporate existence of the predecessor in interest of the plaintiffs; that the service by the privately owned electric light and power plant in Seward was unsatisfactory, that the rates were exceedingly high, that the capacity of the private plant was so small as to render it impossible for the plant to fairly supply the town of Seward with electric current, that the development of the said Town of Seward was being held up by a lack of plentiful supply of electric current at reasonable rates, and that the building of a municipal plant would not work a confiscation of the private plant, that all of which said statements and others made by the defendant Brownell are false and fraudulent and in furtherance of said conspiracy; that said statements were false and fraudulent to the knowledge of said Brownell, and further that said Brownell concealed from the Committee of Congress that the rates charged by the plaintiffs were fixed by ordinance and that the Town had such authority.

The plaintiffs further allege on information and belief that the said defendants unlawfully conspired to ruin

212

the business and property of plaintiffs by enacting Ordinance No. 125, well-knowing that the rates fixed by said ordinance would not produce sufficient revenue to make the project self-liquidating, even if they secured all of the business in the Town of Seward, and that said ordinance is part of an unlawful conspiracy to ruin the business and the property of the plaintiffs; that as part of the conspiracy, the defendants addressed a letter to Clark Foreman, Chief of the Power Division of the PWA, which said letter is false and fraudulent and the statements therein are untrue to a large extent; plaintiffs further allege that there are seventeen different particular reasons why the contract, loan and grant should be declared void; thereafter it is alleged that the Town of Seward, having entered into the contract with the Federal Emergency Administrator of Public Works, proposes and threatens to issue and deliver the bonds thereunder unless the defendants and each of them is immediately restrained from so doing and will proceed with a contract for the construction of said municipal plant, accept the loan and deliver the bonds therefor, to the irreparable damage of the plaintiffs, and that the enjoining of the defendants will result in no detriment or injury to the defendants and that the plaintiffs have no adequate remedy in law.

By their return the defendants aver that no formal franchise was ever executed, but that the Seward Light and Power Company, by its president, Samuel M. Graff, endorsed an acceptance of the terms of the franchise ordinance on the original; deny that the plaintiffs or the late Samuel M. Graff were ever the owners of a franchise from the Town of Seward, Alaska, or that the late Samuel M. Graff legally succeeded to the rights which the Seward Light and Power Company, a corporation, might or did have because the Town of Seward did never assent to an assignment or sale of said franchise; deny that the facilities of plaintiffs are available and adequate to

·meet all requirements for electrical service; deny that the reliable capacity of plaintiffs' facilities available is 631 :K. W.s; aver that the service is not dependable, is irregular, with constant change in frequencies of voltage; deny that the property referred to in the complaint is used and useful in the production of electricity, and aver that the service offered by the plaintiffs does not include service for heating and cooking; deny that the whole Town ·of Seward will not be served by the new distributing system; aver that the approval of the project by the defendant, Harold L. Ickes, his officers and agents was based ·upon reports of engineers and a personal investigation of the proper officers; deny that the plant will not be self-liquidating; deny that twenty-five percent of the money raised will not be used for work; deny that no unemployment emergency exists in Seward; aver that the acts were made specifically to provide for the Territory of Alaska; aver that there was unemployment in Seward at the time of the passage of the acts and at the present time.

The defendants aver that neither the plaintiffs nor their employees have such a vested right in the operation of a privately owned public utility as makes such plaintiffs immune from competition; deny that any of their acts are unlawful or an abuse of discretion or constitute maladministration of powers and privileges of the declared purposes and policies of the act, and aver that it is wholly within the declared purposes and policies of the act; the defendants admit that the proposed municipal plant is not intended to engage and will not engage in interstate commerce, but allege that the construction and operation of the plant will and does promote the general welfare of the United States, is included within the Public Works program, that the project has been approved; that there is no abuse of discretion of any officers and that the District Court is without jurisdiction to interfere with the same; that the Public Works Administrator has contracted and

agreed to make the loan and grant; that the construction and operation of the plant will not be contrary to the terms of the National Industrial Recovery Act and the Federal Emergency Appropriation Act of 1935; deny that said acts are unconstitutional; deny that if such project is constructed it will constitute and will be illegal competition by and on the part of the defendants; but admit the operation will be in competition with the privately owned public utility of the plaintffs; deny that such action will wrongfully cause the plaintiffs great and irreparable injury; admit that there may be a loss to the business of the plaintiffs, and expressly deny that plaintiffs have a right to complain of threatened competition; deny that the operation of a public utility by the municipality, the Town of Seward, is in any manner illegal.

Defendants deny that the defendant Brownell and the defendants, who are members of the Town Council of the Town of Seward, entered into a conspiracy to injure the plaintiffs through illegal or fraudulent means or in any manner; deny that any fraudulent or illegal act was done by them; deny that the defendant Brownell stated at the time of the enactment of Public Act No. 63 or prior thereto that the Seward Light and Power Company was a corporation knowing that the same had been dissolved, and aver that he did not know until his return to Seward, Alaska, in July of 1935 that the same was not a corporation; admit that the defendant Brownell made the statements referred to in the last paragraph on page 14 of the complaint, but deny that the same were in pursuance of an illegal conspiracy or to injure the plaintiffs or their predecessor, and aver that at the time of the making of such statements they were true in every respect; and aver that the members of the Common Council are and were friendly to the private owners of the public utility in Seward and were without disposition on their part to deal arbitrarily or unjustly with such owners.

The defendants admit that a contract has been entered into with the Federal Emergency Relief Administration of Public Works and have already issued and delivered the revenue bearer bonds of said town in the sum of $121,000 to an authorized depository pursuant to the contract; and aver that since the initiation of this action the revenue bearer bonds of said town in the sum of $90,000 have been accepted by the United States of America and the sum of $90,000 has been paid to the First National Bank of Seattle, Washington, as a designated depository by and through the Federal Reserve Bank of San Francisco, that said $90,000 will be allocated in two different funds— Construction Fund A—for disposition or to remain on deposit in said Seattle depository for payments contracted for dynamos, engines and equipment, distributed upon certificate of contractor and supervising engineer, Construction Fund B—for deposit in the Bank of Seward, Alaska, also a designated depository to cover the payroll and construction costs, including pole line installation and equipment; that it is estimated that the sum on deposit in Construction Fund A is the sum of $44,000 with the balance of approximately $46,000 to Construction Fund B—that Construction Fund B has not yet been set up and awaits the filing of an additional bond by the Treasurer of the Town of Seward and the approval of such bond by the Council of said town in accordance with the provisions of Section 2394, Compiled Laws of Alaska 1933. That on June 7th, 1937, the Mayor and Clerk of the Town of Seward were authorized by a vote of the Council and the members thereof to enter into a contract with Bennett and Taylor of Los Angeles, California, and that on July 2nd, 1937, pursuant to said resolution, the Mayor and Clerk of said town did enter into a contract with said Bennett and Taylor for the installation, construction and erection of a municipal diesel plant together with a distributing system and accessories.

The questions presented by the complaint and the returns are:

First: Whether or not the defendants or any number of them conspired to injure the plaintiffs or their predecessors.

Second: Whether or not the defendant Brownell or any other defendant made untrue or fraudulent statements, knowing them to be so, and thus furthered his or their purpose.

Third: Whether or not the project comes within the act.

Fourth: Whether or not the project is self-liquidating.

Fifth: Whether or not twenty-five percent of the money raised will be expended for work.

Sixth: Whether or not the plaintiffs are in a position to contest the constitutionality of the acts.

Seventh: Whether or not the acts of Congress are constitutional.

■ First: At the hearing had, all the evidence that could possibly prove a conspiracy was admitted and the court is of the opinion not only that the evidence does. not establish a conspiracy, but goes further—that it does: not even tend to establish a conspiracy.

■ Second: The court is of the opinion that while the defendant Brownell presented the matter in its most favorable light before the various officials and committees. of Congress, he had a reasonable ground to believe that the matters he presented were true and that to a large extent he represented the conditions as they were in Seward at that time, which was his duty to do as Mayor of Seward; that the predecessor in interest of the plaintiffs. were also represented by written statements filed, and that no fraud was practised by any of the defendants.

■ Third: The court is of the opinion that the project in question comes within the general language of the act. Section 202 provides, 48 Statutes 201, 40 U.S. C.A. § 402: "The Administrator, under the direction of the President, shall prepare a comprehensive program of public works, which shall include among other things the following: * * * (b) conservation and development of natural resources, including control, utilization, and purification of waters, prevention of soil or coastal erosion, development of water power, transmission of electrical energy, and construction of river and harbor improvements and flood control * * *; (c) any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public; * * *."

■■ Fourth: The court is of the opinion that as to whether or not the project will be self-liquidating is a matter to be determined by the Administrator. The contract provides for a self-liquidating project; it provides when the bonds and interest are to be paid, and the law provides, as well as the contract, that the bonds are not a general obligation on the town but are to be paid for by monies realized from the operation of the project. The Administrator by approving the project necessarily found that it would be a self-liquidating project within the meaning of the Act of Congress and policies of the Public Works Administration; that there is a presumption of correctness attached to the action of administrative officials with respect to matters committed to their discretion, and the exercise of such discretion will not be disturbed if based upon substantial testimony and not manifestly arbitrary and unreasonable.

Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894, holds: "Where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and even upon mixed questions of

law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they have the power, * * *."

■ Fifth: As to whether or not twenty-five percent of the money raised will be used for work. This also raises a question of fact to be determined by the Administrator.

Sixth: Greenwood County v. Duke Power Co., 4 Cir., 81 F.2d 986 at page 997, holds:

"For the reasons heretofore stated, the plaintiffs are not entitled to an injunction; but, even if the statute were unconstitutional or the action of the administrator unauthorized, they would not be entitled to the injunction which they ask, for the reason that no legal right of theirs is infringed by any proposed action of the county or of the commissioner of public works. The county, in its proposed action, will not infringe any such right; for it is thoroughly settled that competition by a county or municipality violates no right of a public service corporation doing business therein which, as is the case of plaintiffs here, has no exclusive franchise. Puget Sound [Power & Light] Co. v. Seattle, 291 U.S. 619, 54 S.Ct. 542, 78 L. Ed. 1025; Madera Waterworks v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915. The administrator will not infringe any such right in making the loan and grant to the county from funds of the United States; for it is equally well settled that no citizen or taxpayer has any such right in funds of the government. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 601, 67 L.Ed. 1078. In the case just cited the Supreme Court, after referring to taxpayers' suits to enjoin an illegal use of money by a municipal corporation, said: 'But the relation of a taxpayer of the United States to the federal government is very different. His interest in the moneys of the treasury—partly realized from taxation and partly from other sources—is shared with millions of others, is compar-

atively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.'

"As the county infringes no right of plaintiffs by entering into competition with them, and as the administrator infringes no right of theirs in making loans or grants of public funds, it would seem to follow necessarily that no such right is infringed when the administrator makes a loan and grant to the county in order that the county may engage in competition; for the addition of negative quantities can never result in a quantity that is positive. The exact question was before the Circuit Court of Appeals of the Eighth Circuit in Arkansas-Missouri Power Co. v. City of Kennett, Mo. (C.C.A.8th) 78 F.(2d) 911, 914, and we see no answer to what was said by Judge Sanborn, speaking for the court, in that case. Said he:

" 'The court below was of the opinion that the power company was in no position to question the power of the federal government to loan or give money to the city of Kennett. We are in accord. The United States is not proposing to become a competitor of the power company. It will have no right, title, or interest in the plant when completed and nothing to do with operating it. The destruction of the power company's property will come about by reason of the city's operation of the plant when erected. The position of the United States is that of a lender of money, a buyer of bonds, and a giver of gifts. True, the money procured from the government will enable the city to build the plant, and, if the city builds the plant, it will no doubt operate it, and when it does operate the plant the city will take the customers of the power company, and the company's property in Kennett will become worthless or greatly impaired in value. We know of no rule of law, however, which permits one indirectly hurt, no matter how seriously, by a government expenditure, to question the power of the government to make it.' "

Since the decision of the foregoing case the same matter came before the Circuit Court of Appeals for the District of Columbia, in the case of Franklin Township v. Tugwell et al., 66 App.D.C. 42, 85 F.2d 208, at page 215, the courts say: "We come now to a consideration of the capacity of the individual plaintiffs to maintain this action, and of their justiciable interests. The mere claim that the rental value of the property now being leased by plaintiff Alsop will be depressed because of low rentals offered by the Resettlement project constitutes, in our opinion, no legal injury to her. No legal right of hers is invaded. It is merely damnum absque injuria. [And authorities cited.]"

■ The court is of the opinion that the same principal applies to the case at bar as applied in the above case. In the case at bar the plaintiffs allege that they will be injured by the municipal plant selling current to residents of Seward at lower rates than they furnish same. In the case referred to, the plaintiffs claimed that they would be injured by the Government renting houses to their tenants at lower rates than they were renting them and the court is not able to see any distinction in the principals involved. In this case, however, certain plaintiffs were allowed to proceed because they alleged that their county and state taxes would be increased as a result of the project. This, however, does not apply to the case at bar, first because no such allegation has been made nor proof offered thereon, and second, because the bonds are not a general obligation on the Town of Seward and therefore cannot raise or tend to raise the taxes of said town.

■ We now come to the last question to be considered, and that is the constitutionality of the acts of Congress. This question becomes moot, because if the court is right in its opinion that plaintiffs are not in a position to attack the constitutionality of these acts, it is immaterial whether the acts are constitutional or not. If, however, the court were called upon to decide the constitu-

tionality of the acts, the court would come to the conclusion reached by the court in Greenwood County v. Duke Power Co., supra:

"We think that the enactment of these provisions of the statute was well within the power of Congress. It may be conceded that, under ordinary circumstances, the power would not exist to raise and expend funds for construction local in character and not connected with the exercise of any of the powers of regulation expressly conferred upon the federal government; but the circumstances under which this statute was enacted were by no means ordinary and the construction contemplated was not of isolated projects but of a vast program of public works intended to relieve a condition of unemployment which was nationwide in scope and had become a menace, not merely to the safety, morals, health, and general welfare of vast numbers of the people, but also to the stability of the government itself. As was well said by Judge Otis in Missouri Utilities Co. v. City of California (D.C.) 8 F.Supp. 454, 458:

" 'Those who have studied the history of the world as well as those who are familiar only with contemporaneous events throughout the world know that the existence of a nation may be imperiled by foreign aggression not only, by civil war not only, it may be imperiled, it may be destroyed utterly, by the unreasoning rage of masses, a rage aroused by hunger, by want in every form, by a sense of injustice, a rage stirred up alike by sincere and honest, as well as by villainous leaders. It is a rage which does not analyze, which does not discriminate. It is not content with driving the money changers from the temple; it destroys the temple itself. Every one should know that in general economic distress is possibility of grave danger to the established order. The political branches of government, that is, the executive and legislative branches, must guard and protect the national existence, if it is to be done at all, and that they can do only through the enact-

ment and enforcement of laws. It is for them to decide whether a situation has arisen which endangers the existence or general welfare of the nation; it is for them to decide what measures shall be taken to avert dangers arising from that situation. With these decisions or their wisdom courts and judges have nothing to do save only in that case in which it has most clearly been demonstrated that the political branches of government not only have usurped powers not granted them by the Constitution, but in so doing directly have injured a litigant who has come to the courts for relief.'

"In the light of our history, it is idle to say that, in the presence of such a situation as confronted Congress, the national government must stand by and do nothing for the relief of the general distress, confining its activities to matters as to which it is given legislative powers by the Constitution. It is the only instrumentality which the people of the country have which can deal adequately with an economic crisis nationwide in scope; and there can be no question but that, for the purpose of dealing with such a crisis, it can exercise the power to raise and spend money under article 1, section 8, clause 1 of the Constitution which provides: 'The Congress shall have Power To lay and collect Taxes, Duties, Imposts and excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.'

"There has been much discussion as to the meaning of this 'general welfare' clause of the Constitution; but it is now definitely settled that the power of Congress to authorize expenditure of public money for public purposes is not limited by the direct grants of legislative power contained in the Constitution. Dealing with this question in the recent case of United States v. Butler [297 U.S. 1], 56 S.Ct. 312, 319, 80 L.Ed. [477], [102 A.L.R. 914], the Supreme Court, speaking through Mr. Justice Roberts, said:

" 'Since the foundation of the nation, sharp differences of opinion have persisted as to the true interpretation of the phrase. Madison asserted it amounted to no more than a reference to the other powers enumerated in the subsequent clauses of the same section; that, as the United States is a government of limited and enumerated powers, the grant of power to tax and spend for the general national welfare must be confined to the enumerated legislative fields committed to the Congress. In this view the phrase is mere tautology, for taxation and appropriation are or may be necessary incidents of the exercise of any of the enumerated legislative powers. Hamilton, on the other hand, maintained the clause confers a power separate and distinct from those later enumerated, is not restricted in meaning by the grant of them, and Congress consequently has a substantive power to tax and to appropriate, limited only by the requirement that it shall be exercised to provide for the general welfare of the United States. Each contention has had the support of those whose views are entitled to weight. This court has noticed the question, but has never found it necessary to decide which is the true construction. Mr. Justice Story, in his Commentaries, espouses the Hamiltonian position. We shall not review the writings of public men and commentators or discuss the legislative practice. Study of all these leads us to conclude that the reading advocated by Mr. Justice Story is the correct one. While, therefore, the power to tax is not unlimited, its confines are set in the clause which confers it, and not in those of section 8 which bestow and define the legislative powers of the Congress. It results that the power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution.'

"If it be conceded, as we think it must be, that the expenditure of public funds for the relief of nation-wide unemployment is within the power of Congress, as being

an expenditure in furtherance of the general welfare of the United States, we think that it necessarily follows that expenditures for a nation-wide program of public works for the purpose of providing employment in such an emergency is within the Congressional power; for from the earliest periods of history nations have been accustomed to resort to the construction of public works as a means of relieving the unemployment of their people. Certainly, it is hard to imagine any expenditure which the federal government might make for the purpose of relieving the danger and distress arising from unemployment which would interfere so little with private business, and would have so little tendency to create a dependent attitude on the part of the people, as a program of public works. And, not only does such a program relieve unemployment by furnishing work in the construction of the immediate projects and in the manufacture of materials to be used therein, but it also makes a lasting contribution to the national wealth, and thus counterbalances to some extent the burden of the increase in the national debt which it entails. If, therefore, the relief of nation-wide unemployment be a legitimate end for Congress to have in view in the exercise of its power to raise and spend money under the 'general Welfare' clause, the construction of a nation-wide program of public works would seem to be a legitimate means to that end."

We are therefore of the opinion that the application for a temporary restraining order should be denied.