RIMM, J.T.C.
This is a state tax matter arising under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to 54:32B-29, in which plaintiff seeks an exemption for the price paid for his boat, Venture III, under N.J.S.A. 54:32B-8.12 (§ 8.12). The statute which is the subject of this litigation reads as follows in pertinent part:
Receipts from sales ... of ... vessels primarily engaged in commercial party boat (head boat) sport fishing [sic] and subject to annual inspection by the United States Coast Guard ... are exempt from the tax imposed under the Sales and Use Tax Act.
*264 [N.J.S.A. 54:32B-8.12]
Plaintiff purchased the Venture III in Galveston, Texas on May 1, 1989, and paid $65,000. No sales tax was paid to the State of Texas. Shortly after, the purchase, plaintiff brought the Venture III to New Jersey, and it has been in New Jersey since that time. As a result of the boat’s use in New Jersey, defendant imposed a use tax of $3,900 by a final determination dated August 11, 1993, and plaintiff paid $7,965.10, the imposed use tax, interest and penalties.
Claiming that the use tax imposition was invalid, plaintiff filed a timely complaint in the Tax Court alleging that the Venture III is a commercial sportfishing boat, operating as a party boat, or head boat, and that it is exempt from use tax under § 8.12. Plaintiff also claims that the imposition of a use tax on the purchase of the Venture III is a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and of the Constitution of the State of New Jersey. In a third count, pláintiff alleges that the actions of the Director, Division of Taxation, constitute a violation of 42 U.S.C.A § 1983 entitling him to relief in accordance with 42 U.S.C.A § 1988.
At the time of trial, the parties stipulated that plaintiffs vessel meets the requirement of annual inspection by the United States Coast Guard under § 8.12 and that the vessel is “Coast Guard certified.”
The Venture III has an overall length of forty-four feet. It has a walk-around handrail, two bathrooms, five or six benches in its cabin with a seating capacity of twenty-four, two tables, a step up wheelhouse, three radios, two radar sets, depth recorders, fish-finding equipment, a boarding ladder or T-ladder used by persons wearing fins to gain access to the boat, a bench on the aft area of the boat, a main bench in the center of the boat, and racks for scuba tanks. It is weatherproof, and there is fishing equipment on the vessel consisting of light tackle, bluefishing equipment and trolling gear.
The boat is docked in Belmar, New Jersey, and is put to several uses. It carries fishermen or anglers, that is, persons who fish *265 with rod and reel. It takes scuba divers who spearfish and take crustaceans by hand. It also engages in commercial trips. In plaintiffs own words, the primary use is by scuba divers. Plaintiffs letterhead contains the name of the boat, Venture III, and the statement “Charter Boat.”
The primary use of the boat is by scuba divers. This use is accomplished by plaintiffs establishing a schedule for an entire summer season for use by divers’ clubs or by shops engaged in the business of selling diving equipment. The club or dive shop arranges for the trip with plaintiff and pays for the trip for all the divers with one check made payable to plaintiff. The schedule of trips and brochures describing the boat’s uses are distributed at the beginning of each season to dive shops, to dive clubs and to persons interested in scuba diving. Anyone interested in scuba diving from the Venture III contacts the dive club or the dive shop scheduled to use the boat on the given day, but would not contact plaintiff. Each such interested person then pays the dive shop or the dive club a fee, and the dive club or the dive shop then pays plaintiff with one check for the use of his boat for the day scheduled. “The individuals are paying their fares to whomever is using the boat for the day, and I get paid by one check.” In effect, the boat is chartered by a specific dive club or a specific dive shop on each given day in accordance with the schedule.
The maximum number of divers that plaintiff takes on a trip is twenty-four if there is to be a one-tank dive by each person, that is to say, each diver will have one tank of air and when the diver uses up the air in the tank, the trip is at an end. If the trip is a two-tank trip, the maximum number of divers on each trip is eighteen. Accordingly, the activity involving plaintiffs boat is geared to diving and the use of diving equipment. An instructor, an assistant instructor or a representative of a dive club or a dive shop accompanies each group of divers.
The fee for the use of the Venture III is $700 per trip on weekends. Normally, there are two trips on Saturday and two trips on Sunday, one in the morning and one in the afternoon on each day, for a total of four trips at $700 for each trip. If a dive *266 shop or dive club is unable to arrange for a fall complement of divers for an afternoon trip, plaintiff may vary the fee. The dive shop or dive club then pays him a fee based on the number of divers over a minimum; but the dive club or dive shop still collects the money from the divers for the particular scheduled trip and pays plaintiff with one check. The check is payable to plaintiff by the dive shop or dive club for all the persons going on the trip scheduled for the particular dive shop or dive club. The dive club or dive shop also selects the destination for a given trip.
The schedule provides for only two-tank dives on Saturday and Sunday mornings, and the fee is $700 even if there are less than eighteen divers. One-tank dives are provided for only on afternoon trips, and the minimum charge is $800. A club or shop may arrange for a two-tank dive on a Saturday or Sunday afternoon and the minimum charge is $360.
Trips with less than the maximum number of divers are more common on weekday afternoons. In any event, this all depends on the shop’s customers or the club’s members and what arrangements the shop or the club makes with plaintiff. It is up to the dive shop or the dive club to make the arrangements for a two-tank dive or a one-tank dive and to advise plaintiff accordingly.
The dive shop charges the divers $60 or $65 per trip, and, depending on the number of persons going on the trip, the dive shop makes a profit by keeping whatever it collects above the fee it pays plaintiff. The dive shops also make money on each trip by selling the divers equipment and providing instructions for them.
By virtue of his method of operation, plaintiff rarely takes individual divers who come to him at the dock and offer to pay a fee for themselves, but he does occasionally have “open” days during the week on which “walk-ons” call him directly. According to plaintiff, by far, the bulk of his work involves the schedule that he makes up at the beginning of the summer.
When the boat arrives at the location selected by the club or shop which has arranged the trip, the divers “buddy up” with another diver and dive to a spot they select. Each diver makes *267 his or her dive depending on what he or she wants to do. If a diver wants to take fish, the dive will be above the “bottom,” or “right on the bottom” for lobsters. Most of the divers take crustaceans by hand.
According to plaintiffs testimony, the brochure which he uses to advertise his boat indicates three types of activities: scuba diving, fishing and commercial use. When asked why he makes a distinction between scuba diving and fishing, since many of his scuba divers catch fish or take crustaceans, plaintiff indicated that he does not take anglers when he takes scuba divers, and he does not take scuba divers when he takes anglers. In his words, scuba diving and fishing “don’t mix.”
The maximum number of persons who fish by rod and reel, or who are “angling” as plaintiff put it, is eighteen on a trip, and groups are usually arranged for by local businesses which pay $700 per day for a group of anglers. This is done on weekdays only. Plaintiff does not provide for individual anglers who come to his boat to pay an individual fee to go fishing.
Plaintiff also does commercial work on weekdays. This work consists of sewer pipe inspections by video; transporting persons for sewer pipe repairs; side-scan sonar surveys; video tapes of sunken ships for insurance companies; recovery of dead bodies; and artificial reef inspections and deployment of materials on artificial reefs.
During the course of plaintiffs cross examination, defendant had an exhibit marked which indicates the income plaintiff received from the operation of the boat, Venture III. The exhibit is set forth as follows:
YEAR AND SOURCE AMOUNT PERCENTAGE
1989 Gross Income $31,720
Rod & reel fishermen 2,020 6%
Diving clubs and shops 28,700 90%
Commercial 1,000 3%
1990 Gross Income $35,936
Rod & reel fishermen 3,940 10%
*268 YEAR AND SOURCE AMOUNT PERCENTAGE
Diving clubs and shops 31,846 Commercial 150 89% Less than 1%
1991 Gross Income $51,703
Rod & reel fisherman 1,850 4%
Diving clubs and shops 48,688 94%
Commercial 1,165 2%
1992 Gross Income $71,234
Rod & reel fishermen 1,960 3%
Diving clubs and shops 47,703 67%
Commercial 21,571 30%
1993 Gross Income $68,663
Rod & reel fishermen 770 1%
Diving clubs and shops 49,593 72%
Commercial 18,300 27%
Plaintiff prepared this document as “tallying up the amount of money that each group gave me.”
Plaintiff also called Robert Bogan, Jr. as a witness. He described himself as a third generation “party boat owner and captain.” He described his vessel, as a “party charter vessel,” although during his testimony he referred to his boat as a party boat. He described a party boat as a boat which advertises in newspapers and brochures and which has a person in the street who “hawks” customers into the parking lot. He also described a “head boat” which he said is generally a boat with a walk-around deck which takes passengers in groups or as individuals. Persons using the head boat pay “by person.” Occasionally, the whole boat will be chartered by a group which will pay one lump sum. He also said that party boats do act as charter boats, “from time to time.” He defines a charter as “a company paid trip.”
Plaintiff himself defined a head boat as “a vessel that takes a fare from each person that gets on board.” He indicated that he obtained that definition from a letter he received from the conferee who originally handled the dispute with regard to the payment of the use tax.
*269 In order for a vessel to be exempt under the provisions of § 8.12 applicable to this case, there are four requirements: (1) the vessel must be Coast Guard certified; (2) it must be a party boat (head boat); (3) it must be used for sportfishing; and (4) sportfishing must be the primary use in which the vessel engages. Plaintiffs boat is Coast Guard certified. However, defendant claims that plaintiffs vessel does not meet any of the other three requirements for exemption.
In dealing with exemptions under New Jersey law, the rule is that exemptions are to be strictly construed against the person claiming the exemption. Dow Jones & Co. v. Director, Div. of Taxation, 5 N.J.Tax 181,186 (Tax 1983), aff'd per curiam, 193 N.J.Super. 80, 472 A.2d 168 (App.Div.), certif. denied, 99 N.J. 153, 491 A.2d 668; Container Ring Co. v. Director, Div. of Taxation, 1 N.J.Tax 203, 208 (Tax 1980), aff'd o.b., per curiam 4 N.J. Tax 527 (App.Div.), certif. denied, 87 N.J. 416, 434 A.2d 1090 (1981). “ ‘[A] claimed exemption from taxation must find support in clear and unmistakable expressions of the legislative act.’” Estate of Kuebler v. Kingsley, 106 N.J.Super. 13,17, 254 A.2d 115 (App.Div.1969) (quoting Hopkins v. Neeld, 41 N.J.Super 345, 351, 125 A.2d 153 (App.Div.1956)). “Statutes granting exemptions from taxation ‘are most strongly construed against those claiming exemption.’ ” Mal Bros. Contracting Co. v. Director, Division of Taxation, 124 N.J.Super 55, 61, 304 A.2d 750 (App.Div.1973) (quoting Bloomfield, v. Academy of Medicine of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966)). The reason tax exemptions are strictly construed was articulated in Morris Tp. v. LF Assocs., 10 N.J.Tax 240 (Tax 1988).
The general rule in interpreting tax exemptions is that such exemptions are to be strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public tax burden. Taxation is the rule, and exemption is the exception to the rule. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Board of National Missions v. Neeld, 9 N.J. 349, 353 [88 A.2d 500] (1952). The burden is upon the claimant to clearly bring himself within an exemption provision. Ibid
[Id. at 248.]
*270 Accordingly, in order for the purchase of the Venture III to be exempt from a use tax, plaintiff must clearly bring himself within the provisions of § 8.12. Plaintiff must, as the Director correctly points out, meet all four requirements.
Plaintiff claims that his vessel is used as a commercial party boat (head boat), that it is used for sportfishing, and that sportfishing is the primary activity in which his vessel is engaged. Defendant, on the other hand, contends that plaintiffs vessel is used as a charter boat; that it is not engaged in sportfishing or, in the alternative, if it is engaged in sportfishing, sportfishing is not its primary activity.
Based on the activities in which his vessel is engaged as described by plaintiff, I find that plaintiffs boat is primarily used as a charter boat and not as a party boat (head boat). In dealing with this exempt activity under § 8.12, the Legislature has carefully refined the definition of party boat by adding the parenthetical phrase, “head boat”; and every provision of a statute should be given effect. See State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991), (citing N. Singer, Sutherland Statutory Construction § 46.06 (Sands 4th ed. 1984)).
A head boat is a boat that (1) accepts passengers on a first come, first serve basis; (2) has a predetermined course as set by the owner or captain of the vessel; and (3) is operated by the owner in such a manner that he charges “by the head”, that is to say he charges each person individually who comes aboard his boat and he collects from each person individually, or, “by the head.” The word head is used in accordance with the following definition: “each one among a number: individual (count [head]s) (a cost of $5 per [head]).” Webster’s Third New International Dictionary 1042 (1986). The same dictionary also defines the charter of a boat using the words “charter party” and defining that as: “a mercantile lease of a ship: a specific contract by which the owners of a ship let the entire ship or some principal part of it to another person to be used by him in transportation for his own account either under their charge or under his charge.” Id. at 378. The Legislature by adding the parenthetical “head boat” to *271 party boat intended that the applicable exemption under § 8.12 should apply to boats whose owners provide services to individuals who want to use the boat as individuals at a dock on a first come, first serve basis.
Plaintiffs vessel is primarily used as a charter boat and not as a party boat (head boat), and its purchase is not exempt from use tax. The matter of plaintiffs claim for exemption is accordingly concluded. See Black Whale, Inc. v. Dir., Div. of Taxation, 15 N.J.Tax 338 (Tax 1995) (Boats used to provide cruises, for predetermined groups, that is, boats used for charter cruises, are not exempt from taxation under § 8.12.)
It also should be noted that sportfishing is not the primary use in which the vessel engages. Most of plaintiffs customers are divers, and diving is the primary purpose of a trip on the Venture III even though divers may catch fish or take shellfish from the ocean. The primary activity of the persons using the boat is scuba diving, and not fishing. The vast majority of plaintiffs income comes from charters arranged for groups by dive shops, whose customers are divers, and by dive clubs, whose members are divers. In addition, an instructor, assistant instructor or representative of a dive club or a dive shop accompanies a group aboard the Venture III in connection with diving but not in connection with fishing. The taking of fish or the taking of shellfish is an adjunct to the primary purpose of diving which is the reason that persons use plaintiffs boat.
In his trial brief, plaintiff argues that “an equal protection analysis reveals that the denial of this exemption [§ 8.12] to the taxpayer is unconstitutional.” The plaintiffs position is best stated in the words of his trial brief.
The Venture III is physically constructed the same as it’s [sic] sister ships, which carry primarily deep sea anglers. The Venture III and other boats of its class are hired as head boats, party boats, fishing boats and for other related oceanic activities. To single this taxpayer out for the reasons given is a violation of the taxpayer’s constitutional rights specifically the equal protection clause of the Fourteenth Amendment of the United States Constitution and the New Jersey State Constitution.
*272 The response to such an argument is that different businesses can be taxed at different rates and such a differentiation is not a violation of the Equal Protection Clause. See Puget Sound Power & Light Co. v. Seattle, 291 U.S. 619, 625-26, 54 S.Ct. 542, 545-46, 78 L.Ed. 1025, 1030 (1934). As the Supreme Court has said:
The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it. As was said in Brown-Forman Co. v. Kentucky, [217 U.S. 663, 573, 30 S.Ct. 578, 580, 54 L.Ed. 883, 887]:
‘A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation____ If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.’ It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great.
[State Bd. of Tax. Commrs. of Ind. v. Jackson, 283 U.S. 527, 537-38, 51 S.Ct. 540, 543, 75 L.Ed 1248,1255-56 (1931) (citations omitted).]
The State may tax different taxpayers differently even though they compete. Puget Sound, supra, 291 U.S. at 625, 54 S.Ct. at 545, 78 L.Ed. at 1030. The Fourteenth Amendment “does not preclude competition, however drastic, between private enterprises or prevent unequal taxation of competitors who are different. Those were risks which [taxpayer] took when it entered the field.” Id., 291 U.S. at 626, 54 S.Ct. at 545, 78 L.Ed. at 1031.
It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when *273 subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.
[Carmichael v. Southern Coal and Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 1253 (1937) (citations omitted).]
As stated in Atlantic City Airlines, Inc. v. Director, Div. of Taxation, 4 N.J.Tax 97 (Tax 1982):
[I]n matters of taxation or exemption from taxation the Legislature may make distinctions of degree which have a rational basis. When subjected to judicial scrutiny the distinctions must be presumed to rest on a rational basis if there is any conceivable state of facts which would support them, and plaintiff has the burden of demonstrating that the classification lacks any rational basis.
[Id. at 102-03.]
Given the power of the Legislature over taxation and the fact that no fundamental right or suspect or semi-suspect class is at issue, the Legislature’s classification is constitutional if it is rationally related to a legitimate governmental objective. Chester Bor. v. World Challenge, Inc., 14 N.J.Tax 20, 31 (Tax 1994).
The Senate Revenue, Finance and Appropriations Committee statement to Assembly Bill No. 911, enacted as L.1981, c. 218, which amended § 8.12, indicates that the Legislature intended to exempt commercial party boats from the Act. An earlier statement, dated April 28, 1980, indicates that the bill is designed to exempt commercial party boat sportfishing vessels from the Assembly Revenue, Finance and Appropriations Act. According to the latter statement, the “bill is intended to assist the State’s efforts to promote the expansion of the commercial fishing industry.” A further statement attached to Assembly Bill No. 911 indicates that the bill is designed to exempt from the Act vessels engaged in commercial party boat sportfishing. The statement goes on to state that, “[t]he well-being of the fishing industry is essential to the economic health of the State.” Id.
From these statements, it is clear that the Legislature intended that the fishing industry in New Jersey, and not the diving industry, is to be assisted by the exemption. Further, the statements indicate the Legislature’s intention to assist those engaged in the party boat or head boat business, as opposed to assisting the charter boat industry. Plaintiff has failed to show that the classification made by the Legislature is “palpably arbitrary or *274 capricious,” or that it has no “rational basis in relation to the specific objective of the legislation.” Chester Bor. v. World Challenge, Inc., supra, 14 N.J.Tax at 32, (quoting N.J. Restaurant Ass’n. v. Holderman, 24 N.J. 295, 300, 131 A.2d 773 (1957)). To the contrary, the classification adopted by the Legislature is rationally related to encouraging the fishing industry and the party boat industry in New Jersey. Accordingly, plaintiffs contention that he has been denied the equal protection of the law is rejected.
In view of the result reached in this case, it is not necessary to deal with plaintiffs final claim under 42 U.S.C.A. § 1983.
The assessment made by the Director is affirmed, and the complaint is dismissed.